**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-02868-MSK-KMT

L-3 COMMUNICATIONS CORPORATION,
and L-3 SERVICES, INC.

        Plaintiffs,

        v.

JAXON ENGINEERING & MAINTENANCE, INC.,
JONI ANN WHITE,
RANDALL K. WHITE,
SCOTT WHITE,
SUSAN RETTIG,
CHARLES RETTIG,
JAMES YOUNGMAN,
JERRY LUBELL,
KELLY RICE,
JOHN MCCLURE,
and "JOHN DOES 1-25," said names being fictitious
as such names are unknown at this time

        Defendants.

**PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER**

        COME NOW, Plaintiffs L-3 Communications Corporation and L-3 Services, Inc. (collectively "L-3" or "Plaintiffs"), through undersigned counsel, and respectfully submit this Motion for Entry of Protective Order pursuant to Fed. R. Civ. P. 26(c). In support of their motion Plaintiffs state as follows:

1

549987

**CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1**

Counsel for L-3 initially sent a draft Protective Order to Defendants on February 28, 2011.  Nearly ten weeks later, on May 13, 2011, counsel for Defendants finally provided substantive feedback and comment with respect to the draft Protective Order.

Now, counsel for the parties have conferred at length, and agree in principle to the entry of a protective order.  In fact, the parties agree to the majority of the provisions outlined in the Proposed Protective Order attached as Exhibit 1.  However, the parties have been unable to reach a resolution with respect to limited disputed terms.  As such, Defendants oppose the relief requested herein.

**INTRODUCTION**

This case concerns a conspiracy by former L-3 employees to misappropriate L-3 trade secrets and other proprietary information, to willfully infringe L-3 patents, to knowingly breach confidentiality agreements and to steal L-3's extremely lucrative and unique HEMP hardness testing business.  The technology at issue here is complicated.

Defendants, using L-3 technology and business relationships, are now competing directly and successfully against L-3in the area of High Altitude Electro-Magnetic Pulse ("HEMP") testing, using similar or, as L-3 argues, identical technology.

Each party's response to pending discovery requests was due on June 21, 2011.  Both sides have provided objections to already-propounded discovery requests, but, absent a protective order, neither side can produce business, technical or financial information, trade

secrets, or research and development information because such disclosure could harm its business or competitive position.

The parties have agreed to a two-tiered protective order, under which produced documents or other materials ("Litigation Materials") may be designated either (1) SUBJECT TO PROTECTIVE ORDER, or (2) ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER. However, the parties are unable to reach accord with respect to certain key provisions.

L-3 attaches a Proposed Protective Order herewith. The disputed provisions, discussed in detail below, are highlighted for the Court's review.

## ARGUMENT

### I. Paragraph 12: Access by In-House Counsel to "ATTORNEY'S EYES ONLY" Documents

Paragraph 12 of the attached draft Protective Order provides that materials designated "ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER" may be viewed only by "the receiving attorneys of record, including the co-counsel of record, in-house counsel of the parties, partners, associates, legal assistants, and clerical or other support staff."[1] Defendants, however, object to the inclusion of in-house counsel in this list.

Despite the concern Defendants have expressed that in-house counsel may later use or disclose information for the benefit of L-3, there is no categorical or per se exclusion of in-house counsel from access to highly sensitive and proprietary information. *See Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (citing *U.S. Steel Corp. v. United*

---

[1] Ex. 1 at 8 ¶ 12.

3

*States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984));  *Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2008 WL 4401690, at *2 (D. Kan. Sept. 16, 2008).  Instead, the appropriate inquiry is whether there is a probability that disclosure to in-house counsel will result in a serious risk to confidentiality.  *In re Indep. Serv. Orgs. Antitrust Litig.*, No. CIV. A. MDL-1021, 1995 WL 151739, at *1 (D. Kan. Mar. 9, 1995) (citing *U.S. Steel Corp.*, 730 F.2d at 1469).  The party resisting disclosure has the burden of demonstrating this risk of harm, and must do so by "mak[ing] a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Sprint¸* 2008 WL 4401690, at *2 (citation omitted).  Upon such a showing, courts must balance the needs of the party seeking disclosure against the opposing party's claim of injury resulting from disclosure.  *Id.* (citing *Centurion Indus., Inc. v Warren Steurer & Assocs.*, 665 F.2d 323, 325-326 (10th Cir. 1981)).

      Like retained counsel, "in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions. . . .  The problem and importance of avoiding inadvertent disclosures is the same for both."  *U.S. Steel*, 730 F.2d at 1468.  Thus, when evaluating the potential risk of harm, rather than simply considering a particular attorney's status as in-house counsel, a court should consider whether that particular attorney is involved in "competitive decisionmaking," which includes advising or participating in pricing, product design, marketing or other decisions "made in light of similar or corresponding information about a competitor."  *Id.* at 1468 n.3; *see also Matsushita*, 929 F.2d at 1580 (holding that courts may not disqualify in-house counsel for regular "contact" with competitive decision makers, as this would encompass nearly all in-house counsel and constitute an impermissible per se rule).  Further, "[u]nrebutted statements made by counsel asserting that he does not participate

4

in competitive decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking." *Sprint*, 2008 WL 4401690, at *4 (quoting *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000)); *see also Indep. Serv. Org.*, 1995 WL 151739, at *1-2 (relying on affidavit by in-house counsel regarding his non-involvement in competitive decisionmaking).

Here, Thomas Daley, one of L-3's many in-house counsel, exclusively provides legal advice and is not involved in competitive decision making.[2] He plays no part in the company's pricing, product design, marketing, or other decisions made in light of competitor's activities, trade secrets, or other information.[3] Additionally, Mr. Daley has been permitted to access similarly sensitive materials in previous analogous patent, trade secret, and government contracts litigation and has never revealed or misused or been accused of revealing or misusing confidential information.[4] Thus, Mr. Daley presents no risk that cannot be protected against by a protective order in the attached form. Like any retained counsel permitted to access ATTORNEY'S EYES ONLY materials, he is bound by the rules of professional conduct, the provisions of the Protective Order, and the authority of this Court.

Furthermore, Mr. Daley's exclusion from access to the "ATTORNEY'S EYES ONLY" documents will harm L-3's position in the case. Mr. Daley is an active and valuable participant in this case—he develops legal arguments on key issues, supervises the activities of outside counsel, directs major strategy decisions, and participates in drafting pleadings and discovery

---

[2] Declaration of Thomas Daley ¶¶ 3, 4 (attached as Exhibit 2).

[3] *Id.* at ¶ 4.

[4] *Id.* at ¶ 8.

before filing.[5]  Because Mr. Daley is familiar with this case and the actions of the parties before outside counsel were involved,[6] he will be a valuable resource as the case progresses.

There is no real risk that Mr. Daley will improperly or inadvertently reveal the information at issue here and L-3 will be harmed by his exclusion from access to that information.  Accordingly, the Court should issue a Protective Order in the form attached.

## II. Subparagraphs 11(e) and 12(b) – Disclosure of "SUBJECT TO PROTECTIVE ORDER" and "ATTORNEY'S EYES ONLY" Documents to their Authors and Recipients.

In the original draft of the Protective Order L-3 circulated in February, paragraphs 11(e) and 12(b) specified the following category of person entitled to review Litigation Materials that were confidential (e.g., "SUBJECT TO PROTECTIVE ORDER" – paragraph 11(e)) or for attorneys eyes only (e.g., "ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER" – Paragraph 12(b)), respectively:

> Any person who is indicated on the face of a document to have been an author, addressee or copy recipient thereof.

In their May 13 response, the Defendants sought to broaden the category by adding the bold and underlined text below.

> Any person who is indicated on the face of a document to have been an author, addressee or copy recipient thereof**; who is alleged by a party to be an author, addressee, or recipient thereof; or who counsel believes in good faith has previously received the document or information by legal means from the Producing Party or the government**.

---

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 8.

In response, L-3 proposed establishing a protocol whereby the parties' counsel would identify "ATTORNEY'S EYES ONLY" documents they intended to show to their client(s) and the evidentiary basis for the belief that their client(s) had seen the document before. The opposing party would then have an opportunity to object and, if necessary, move the Court for a protective order. The approach is admittedly cumbersome and runs the risk of revealing glimpses of what might be considered attorney work product, but was offered as a means of propelling the negotiation.[7]  Instead of continuing the negotiation, however, the Defendants simply rejected the proposal and maintained their insistence on the language quoted second above. In light of the impasse, L-3 now reverts to its original position, quoted first above. L-3 believes the approach the Defendants seek is too vague and that, if an "ATTORNEY'S EYES ONLY" document is important enough to share with a non-attorney, then counsel should be willing to set forth the basis for its belief that the non-attorney has already seen the document. Barring an agreement on this basic premise, L-3 believes the original language – requiring proof on the face of the document – is the simplest and least cumbersome approach.

---

[7] This approach, too, would obviate the need for inclusion of another paragraph the Defendants sought to introduce which would allow counsel to share "ATTORNEYS EYES ONLY" documents with a deponent in preparation for their deposition. That paragraph would allow counsel to reveal "ATTORNEYS EYES ONLY" documents to:

> A witness at a deposition and their counsel, to the extent disclosure is reasonably necessary in connection with his/her testimony, provided that before receiving or being advised of the contents of ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER Litigation Materials shall agree to be bound by this Stipulation and Order and execute an acknowledgment in the for of Attachment A hereto.

7

### III. Subparagraph 12(e): Disclosure of "ATTORNEY'S EYES ONLY" Documents to Designated Technical Advisors

Reflecting the highly technical nature of the litigation and relevant documents, subparagraph 12(e) permits each side:

> to appoint one technical person (a "Technical Advisor") to review Litigation Materials designated ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER to the extent necessary to assist counsel in this action and advise counsel with respect to technical and scientific matters . . . .[8]

The subparagraph further provides that each technical person shall agree to be bound by the terms of the Protective Order, and execute an Acknowledgement Form to that effect.[9]

Defendants object to the appointment of Technical Advisors with access to documents designated ATTORNEY'S EYES ONLY. In its conferences with Defendants, L-3 explained that it would appoint Charles Crain as its Technical Advisor. Mr. Crain is a long-time employee of L-3, and an expert with respect to HEMP testing technology. It is L-3's understanding that Defendants' primary objection here is to the use of a person internal to L-3 as a Technical Advisor, who will have access to competitively sensitive ATTORNEY'S EYES ONLY materials.

However, courts do not automatically exclude in-house personnel from access to competitively sensitive information, instead balancing the risk of harm from disclosure against the risk that nondisclosure will impair the party's ability to proceed effectively with the lawsuit. *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *3 (W.D. Tenn. Jan. 30, 2002); *see also MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 502

---

[8] Ex. 1 at 9 ¶ 12(e).

[9] *Id.*

(D. Kan. 2007).  The party seeking to avoid disclosure bears the burden of demonstrating a risk of harm related to disclosure.  *MGP Ingredients*, 245 F.R.D. at 501.  To meet this burden, a party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). When the case involves unique technology, a narrow field of expertise, or uniquely qualified personnel, courts find in favor of disclosure.  *Id.* at 502; *Frees, Inc. v. McMillian*, 2007 WL 184889, at *5 (W.D. La. Jan. 22, 2007); *Medtronic*, 2002 WL 33003691, at *3-4;

In *MGP Ingredients*, a patent and trade secret dispute, the court entered a protective order permitting the plaintiff's in-house scientists to access all of the discovery materials produced by the defendants, despite defendants' arguments that its trade secrets would be thereby disclosed to a competitor.  *Id.* at 502.  The court reasoned that the defendants had failed to make more than categorical arguments that they would be harmed by such disclosure.  *Id.* at 501.  All persons with access to the information at issue were required under the protective order to sign an agreement not to use or disclose any confidential information for purposes other than the lawsuit. *Id.* at 502.  As such, any actual risk of harm was small.  *Id.*  Finally,

> [plaintiff's] in-house personnel have substantial experience in a narrow field that cannot be replaced in the 'open market.'  Prohibiting [plaintiff's] employees from having access to discovery materials in this case could impair its ability to prosecute its claims against defendants, at the heart of which is [plaintiff's] allegation that defendants made wrongful use of [plaintiff's] confidential information.

*Id*.  Because the defendants did not demonstrate a concrete risk of harm, the *MGP Ingredients* plaintiff's need to access the information weighed in favor of disclosure.  *Id.*

9

Similarly, in *Frees* the court permitted in-house personnel to access discovery because the technology at issue was "unique and not easily comprehended," it would be "highly unrealistic to expect trial counsel to become sufficiently expert in the technology and data at issue to be able to conduct the necessary evaluation of the discovery produced by the parties," and hiring an outside expert would be very difficult because "no experts currently have the particularized knowledge of [the plaintiff's] technology necessary to properly evaluate the [defendant's] documents." *Frees*, 2007 WL 184889, at *5.

Here, the parties' dispute revolves around highly technical information, including the design of HEMP testing technology, which is the business of both L-3 and the Defendants. Understanding of the technology and component technology at issue, at a *meaningful* level, is admittedly beyond the abilities of L-3's counsel. As such, a Technical Advisor will fill a much needed role by interpreting and advising with respect to technical and scientific information contained in the Defendants' documents.

Additionally, L-3's HEMP testing technology is sophisticated, novel and unique, as thus is Defendants' imitation of it. Indeed, several Defendants are named inventors on L-3's patents at issue, having co-invented the very technology they stole while employed by L-3, prior to jumping to work for Defendant Jaxon. As such, virtually all of the most knowledgeable experts in the field work for L-3, Jaxon or possibly one other primary competitor. It is unlikely that either L-3 or Jaxon will find someone outside of their own ranks with the appropriate technological background to be of assistance here.

Finally, any Technical Advisor will be bound by his or her agreement to maintain confidentiality and the rules of this Court, and will be subject to sanctions for improper use or

disclosure. *See MGP Ingredients*, 245 F.R.D. at 501. There is no real risk of harm to the Defendants, and L-3 requires the expertise of an in-house Technical Advisor to adequately prosecute its claims. As such, L-3's motion should be granted, and a Protective Order should issue in the form attached.

### IV.     Defendants' Suggested Paragraph: Prohibition on Drafting, Filing or Prosecuting Patent Applications after Receiving "ATTORNEY'S EYES ONLY" Documents

Patent prosecution bars are increasingly common provisions within protective orders entered in patent infringement cases. Essentially, a patent prosecution bar seeks to protect against an undue risk that a patent attorney, who both prosecutes patents and participates in patent infringement litigation for a litigant, might "inadvertently misuse" confidential information disclosed to her during the course of a patent litigation. Juo, James and Pitman, David J., *A Prosecution Bar in Patent Litigation Should be the Exception Rather than the Rule*, 15 VA. J.L. & TECH. 43 (2010). Patent prosecution bars stem from the Federal Circuit's decisions limiting disclosure of documents to attorneys involved in competitive decisionmaking for a party. *See, e.g., U.S. Steel,* 730 F.2d 1465 at 1468. Recently, the Federal Circuit tightened the use of patent prosecution bars, mandating that

> a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflects the risk presented by the disclosure of proprietary competitive information. We further hold that the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from

11

restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*In re Deutsch Bank Trust Company Americas,* 605 F.3d 1373, 1382 (Fed. Cir. 2010).

The original draft protective order L-3 circulated in February did not contain a prosecution bar provision. On May 13, when the Defendants finally provided their comments to L-3's original draft, the Defendants inserted a new paragraph 14, a prosecution bar. The Defendants' proposed paragraph read:

> Each individual who receives any Litigation Materials (other than purely financial documents or similar financial information) designated as ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER, or testimony or other discovery containing or describing such Litigation Materials, from the time the ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER material is received until one (1) year following the final resolution of all the Action and of any and all appeals of the Action, shall not supervise or participate in the drafting, filing, or prosecuting of patent applications or in any reexamination proceeding related to electromagnetic pulse testing equipment, methods, and software used to assess the integrity and/or performance of an electromagnetic barrier or shield, surge arrestor, filter, or other protective devices and components.

Initially, L-3 rejected the Defendants' introduction of a patent prosecution bar, arguing that such a bar was unnecessary in this case and that, even if one was appropriate, the proscribed technical categories and the class of persons affected by the Defendants' proposed bar were too broad. In the spirit of cooperation and with discovery already underway, L-3 acquiesced to the inclusion of a patent prosecution bar, but proposed modifications to the Defendants' language to bring the bar's proscriptions in line with *Deutsche Bank* and the underlying purpose of patent prosecution bars. L-3's proposed edit and addition are shown in bold and underlined type:

> Each ~~individual~~ **attorney** who receives any Litigation Materials (other than purely financial documents or similar financial information) designated as ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER, or testimony or other discovery containing or describing such Litigation Materials,

12

> from the time the ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER material is received until one (1) year following the final resolution of all the Action and of any and all appeals of the Action, shall not supervise or participate in the drafting, filing, or prosecuting of patent applications or in any reexamination proceeding related to electromagnetic pulse testing equipment, methods, and software used to assess the integrity and/or performance of an electromagnetic barrier or shield, surge arrestor, filter, or other protective devices and components **where the patent application or reexamination proceeding is based upon information that was only discoverable to that individual by virtue of that individual's examination or receipt of Litigation Materials designated ATTORNEY'S EYES ONLY – SUBJECT TO PROTECTIVE ORDER.**

Rather than acknowledge L-3's legitimate concerns, the Defendants simply refused L-3's changes and refused to negotiate any additional compromise.

As mentioned above, prosecution bars are traditionally limited in application to the parties' respective counsel.  Expanding the class of covered persons to include any "individual" puts both parties' key personnel in the position of not being allowed to participate in prosecuting patents in their fields of technology if they've reviewed "ATTORNEY'S EYES ONLY" documents, a possibility both parties anticipate.  Additionally, as alleged in the First Amended Complaint, L-3 is confident that most of the Former L-3 Defendants actually possessed many of the documents L-3 has marked and will mark "ATTORNEY'S EYES ONLY" before they left L-3 and since creating Jaxon.  This means that, while the Defendants' counsel may shield the Defendants from "ATTORNEY'S EYES ONLY" documents after a protective order is entered, those individuals will already know the documents' contents and be free to prosecute patents in the relevant technological fields.  This unfair dichotomy might actually have the effect of legitimizing the very wrongful behavior that necessitated this lawsuit.  By limiting the affected

549987

persons to the class traditionally recognized in patent prosecution bars, e.g., trial counsel, these unintended consequences may be avoided.

Similarly, the Defendants' tremendously broad identification of the proscribed technology categories is equally beset with pitfalls and could have the effect of barring any person reviewing "ATTORNEY'S EYES ONLY" Litigation Materials from prosecuting patents having nothing to do with the technology underlying this case.  Accordingly, the language that L-3 suggested as a means of reaching a compromise on the Protective Order limited the proscribed patent application subject matter to that which is only discoverable through exposure to documents reviewed in connection with this litigation.  Rather than negotiating the point, the Defendants stood fast in their refusal.  Admittedly, monitoring and enforcing potential violations of L-3's suggested protocol would be difficult, but no more difficult than monitoring traditional prosecution bars directed toward attorneys working within a narrowly-defined proscribed field.

Barring an agreement on the scope of the patent prosecution bar, and in light of the ethical and legal obligations already in place to prohibit anyone viewing "ATTORNEY'S EYES ONLY" documents from doing what is prohibited under Defendants' proposed language, L-3's proposed Protective Order does not contain a patent prosecution bar.  If the Court deems such a bar necessary, L-3 respectfully requests that the Court adopt language in keeping with the requirements of *Deutsche Bank*.

## CONCLUSION

Accordingly, the Plaintiffs respectfully request that GRANT their motion and enter a Protective Order in the form attached.

14

Dated:  July 1, 2011	Respectfully submitted,

By:	/s/ Carolyn L. McIntosh
Carolyn L. McIntosh, Esq.
James K. Lewis, Esq.
Marci M. Fulton, Esq.
PATTON BOGGS LLP
1801 California Street, Suite 4900
Denver, CO  80202
Phone: (303) 830-1776
Fax: (303) 894-9239
E-mail: CMcIntosh@pattonboggs.com
E-mail: JLewis@pattonboggs.com
E-mail: Mfulton@pattonboggs.com

Steven L. Levitt, Esq.
Karen Lisa Solomon Weiss, Esq.
STEVEN L. LEVITT & ASSOCIATES, P.C.
Two Hillside Avenue, Building F
Williston Park, New York 11596
Phone: (516) 248-9700
Fax: (516) 741-9224
E-mail: slevitt@sllpc.com
E-mail: kweiss@sllpc.com

Suzanne M. Parker, Esq.
PARKER INTELLECTUAL PROPERTY LAW, PC
1610 West Street, Suite 105
Annapolis, MD  21401
Phone: (443) 433-4294
E-mail: sparker@parkeriplaw.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of July, 2011, I electronically served the foregoing Plaintiffs' Motion for Entry of Protective Order upon the following by email:

    Daniel E. Johnson
    McKenna Long & Aldridge LLP
    1900 K Street, N.W.
    Washington, D.C. 20006
    djohnson@mckennalong.com

    Steven Michael Masiello
    Timothy R. Odil
    McKenna Long & Aldridge LLP
    1400 Wewatta Street, Suite 700
    Denver, CO 80202-5556
    smasiello@mckennalong.com
    todil@mckennalong.com

                                    /s/ Carolyn L. McIntosh
                                    Original Signature on File

549987