IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02868–MSK–KMT

L-3 COMMUNICATIONS CORPORATION, and
L-3 SERVICES, INC.,

    Plaintiffs,

v.

JAXON ENGINEERING & MAINTENANCE, INC.,
JONI ANN WHITE,
RANDALL K. WHITE,
SCOTT WHITE,
SUSAN RETTIG,
CHARLES RETTIG,
JAMES YOUNGMAN,
JERRY LUBELL,
KELLY RICE,
JOHN MCCLURE, and
JOHN DOES 1-25, said names being fictitious as such names are unknown at this time,

    Defendants.
_____

**REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER**
_____

    This matter came before the Special Master pursuant to Order dated January 18, 2013 by Magistrate Judge Kathleen M. Tafoya in the above captioned matter. Magistrate Judge Tafoya appointed the Special Master for the purpose of conducting an *in camera* review of documents and making determinations on documents on the issues of privacy and attorney-client privilege. Pursuant to the Order, the Special Master has reviewed the documents and the appropriate pleadings. The Special Master is fully advised on this matter and is ready to enter the following REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER.

REPORT AND FINDINGS OF FACT

    On November 19, 2012 Judge Marcia S. Krieger ordered that the defendants shall file a complete privilege log, listing (and attaching) all documents on any of the hard drives that the defendants contend are either: (i) subject to the attorney-client privilege or (ii) so intensely personal and so utterly irrelevant that they should be withheld from production. Judge Krieger

further ordered that the Magistrate Judge (or such Special Master as she may direct) shall promptly consider whether the listed documents should be produced.

On January 18, 2013 Magistrate Judge Kathleen M. Tafoya appointed William A. Martinez as the Special Master in this case for purposes of reviewing *in camera* the documents described more specifically in the order of Judge Krieger. Magistrate Judge Tafoya further ordered that the Special Master should determine whether the documents are either subject to the attorney-client privilege or so intensely personal and so utterly irrelevant that they should be withheld from discovery. Magistrate Judge Tafoya further ordered that the Special Master shall issue a report and order concerning the documents pursuant to the order of Judge Krieger.

Defendants filed three privilege logs and placed them in a database through the Iris Data Services. The privilege logs list more than 17,000 documents. The Special Master has received the training on how to open and use the privilege logs that are in the database. The Special Master has reviewed all of the documents that the defendants contend to be subject to the claim of privacy and all of the documents that the defendants contend to be subject to the attorney-client privilege. The Special Master is ready to enter an order regarding the documents that the defendants claim to be subject to the claim of privacy and the documents that the defendants claim to be subject to the attorney-client privilege. The Special Master did not consider the claims of the defendants that are based on spousal privilege, accountant-client privilege or the work-product doctrine. As indicated above, the order of Judge Krieger directed that the Magistrate Judge or Special Master review and make a determination on the claims of attorney-client privilege and privacy, but she did not direct that the Magistrate Judge or Special Master review and make a determination on the documents that are claimed to be subject to the spousal privilege, accountant-client privilege or the work-product doctrine.

Attached to this REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER and incorporated herein is a document (Attachment) with three columns listing all of the documents by Doc ID number from the three privilege logs in the same order as they appear in the three privilege logs that are in the database. In the first column the Doc ID number is listed. In the second column the claimed privilege is listed. In the third column the ruling of the Special Master is listed. There is no ruling in the third column regarding the documents that were claimed to be subject to the spousal privilege, the work-product doctrine or the accountant-client privilege. On the documents that are claimed to be subject to the privacy claim or the attorney-client privilege the Special Master has placed in the third column either a "Y" for "yes" or an "N" for "no." The "Y" means that the document is subject to the privacy claim or the attorney client privilege and the document should be withheld from production. The term "N" means that the Special Master finds that the document is not subject to the attorney-client privilege or privacy claim and the document should not be withheld from production. Also, it should be noted that the term "N" means that there is insufficient credible evidence to show that the document is covered by the privilege claimed by the defendants.

In the database when a document is claimed to be subject to the attorney-client privilege or the privacy claim the Special Master also considered the documents contended to be  "family member of  withheld document." Such documents are within the group of documents, which are generally attached to or filed at the same time as the main document that is claimed to be

2

privileged. The Special Master inferred from this that defendants are claiming that the documents labeled as "family member of withheld document" are also privileged based on the same reason that they are asserting for the main document in the group.

When multiple claims of privilege are claimed by the defendants the Special Master is only ruling on the ones contended to be either subject to the attorney-client privilege or the privacy claim. In other words, if there is a claim of spousal privilege and privacy the Special Master is ruling merely on the privacy claim and not the spousal privilege claim; when attorney-client privilege and work product are both listed the Special Master is ruling on the attorney-client privilege claim and not on the work-product doctrine; when spousal privilege and the work product doctrine are listed together, the Special Master is not ruling on either of said claims because the Special Master was directed to rule on privacy and attorney-client privilege, but not on the work-product doctrine or the spousal privilege.

It should be noted that the defendants furnished not only a privilege log but also a copy of the documents they contend to be subject to the privileges. This is notable because in many of the reported cases that talk about attorney-client privilege the judge is ruling just based on the privilege log. The Special Master in this case was not limited to just reviewing the privilege log; he also was able to view the documents that are contended to be privileged.

With regard to pleadings, when the defendants showed that they were exchanging unfiled pleadings with their attorney for discussion the Special Master generally found these pleadings to be privileged. However, when the pleadings were signed and sent or filed with a certificate of mailing the Special Master generally found these pleadings not to be privileged since they were not intended to be confidential and were sent or filed.

With regard to e-mails with direct communication between clients and attorney about the subject matter of the litigation, the Special Master generally found these e-mails to be subject to the attorney-client privilege. With regard to e-mails on the subject matter litigation between clients or between corporate employees with attached forwarded e-mails from an attorney the Special Master generally found these to be subject to the attorney-client privilege. With regard to e-mails about the litigation but without forwarded e-mails from an attorney, the Special Master found that these e-mails are generally subject to the attorney-client privilege if they were meant to be confidential and were made for the purpose of obtaining legal advice.

As indicated above the Special Master was only to consider documents that are contended to be subject to the attorney-client privilege or "so intensely personal and so utterly irrelevant that they should be withheld from production." Defendants did use the term "attorney-client privilege" when claiming the attorney-client privilege. However, when claiming that the documents were "so intensely personal and so utterly irrelevant that they should be withheld from production" the defendants apparently used the term "privacy." The Special Master finds that when the defendants used the term "privacy" they meant to contend that the documents were "so intensely personal and so utterly irrelevant that they should be withheld from production," and the Special Master has treated the contention as such.

The order of Magistrate Judge Tafoya directed that the special master should receive training on the database, and as noted above the Special Master did receive the training. A problem with the database is that some of the documents come up as blank pages. That is, when the Special Master clicks on the number of some of the documents in the database the documents do not appear, but instead, blank pages appear. There are several types of blank pages on the database: some that come up as white pages; some that come up as a gray pages that look like envelopes (with diagonal lines); some that come up as a gray pages with nothing on them; and some that come up with writing on them. The person in charge of the support for the Iris Data Service informed the Special Master on how to open most of the kinds of these blank pages by clicking on the "native" icon on the tool bar in the database. The Special Master was able to open most of the kinds of the blank pages and find documents. However, there were several documents that could not be opened because the writing on the blank page indicated that the document could only be opened with a password. The person in charge of the Iris Data Service support team indicated that these documents could not be opened because the password was probably set by the person sending the document. The Special Master was not able to open these several documents that require password and therefore he is denying the claim of privilege on these documents. Regarding the documents that were gray in color with no writing on them and no diagonal lines on them, the person from the Iris Data Service support team informed the Special Master that these were "empty" pages when they were sent so they appear as blank pages in the database. There is no way to find documents on these "empty" pages because there is nothing on them. Thus, the Special Master is denying the claims for privacy and attorney-client privilege on these "empty" pages because there is not sufficient credible evidence to find that the empty pages are subject to a claim of privilege.

## CONCLUSIONS OF LAW

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Its purpose is to encourage full and frank communication between attorneys and their clients, and thereby promote broader public interests in the observance of law and administration of justice. *Id.* at 389. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Id.* at 389. The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out. *Id.* at 389.

The attorney-client privilege protects from discovery communications made in confidence between the client and the attorney. *EEOC v. Outback Steakhouse of Florida, 251 F.R.D.* 603, 610 (D. Colo. 2008). The party asserting the attorney-client privilege has the burden of establishing that the attorney-client privilege clearly applies to specific information or documents. *Id.* at 610.

Under federal common law, the attorney-client privilege arises "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless

4

the protection is waived." *Roe v. Catholic Health Initiatives Colorado,* 281 F.R.D 632, 636 (D. Colo. 2012) (Tafoya, J.). *See also Williams v. Sprint/United Mgmt. Co.,* No. 03-2200-JWL-DJW, 2006 WL 266599, at 2 (D. Kan. Feb. 1, 2006).

A party may be able to successfully demonstrate that the attorney-client privilege applies to communication between corporate employees by showing that the communication was made in confidence for the primary purpose of obtaining legal advice. *See Eutectic Corporation v. Metco, Inc.*, 61 F.R.D. 35 (E.D.N.Y. 1973) at 39-40. *See also Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at 4 (D. Kan. Feb. 1, 2006).

However, the privilege does not protect underlying facts contained within attorney-client communications. *Upjohn*, 449 U.S. at 395-96. Moreover, simply having a document that is not privileged attached to a legitimately privileged document does not make the unprivileged document privileged; furthermore, simply sending a document that is not privileged to a lawyer does not make that document privileged. *See Williams v. Sprint/United Mgmt. Co.,* 245 F.R.D. 660, 670 (D. Kan. 2007).

The attorney-client privilege applies to corporations as well as individuals. *Upjohn,* 449 U.S. at 390. However, in the *Upjohn* case the Supreme Court recognized that the administration of the attorney-client privilege in the case of corporations presents special problems and that as an inanimate entity a corporation must act through agents. In the corporate setting, the attorney-client privilege extends to communications between corporate counsel and corporate agents, ranging from upper echelon management to other employees acting within the scope of their corporate duties when the communications are made for the purpose of obtaining legal advice. *Upjohn,* 449 U.S. at 394-397.

ORDER

IT IS THEREFORE ORDERED as follows.

Regarding the documents that are contended to be subject to the attorney-client privilege, each document that has a "Y" on the same line (in the third column) as the Doc ID number for that document on the Attachment that is attached hereto is subject to the attorney-client privilege. Defendants may withhold these documents from discovery.

Regarding the documents that are contended to be subject to the attorney-client privilege, each document that has an "N" on the same line (in the third column) as the Doc ID number for that document on the Attachment that is attached hereto is not subject to the attorney-client privilege. Defendants shall produce these documents to the plaintiffs.

Regarding the documents that are contended to be so intensely personal and so utterly irrelevant that they should be withheld from discovery, each document that has a "Y" on the same line (in the third column) as the Doc ID number for that document on the Attachment that is attached hereto is so intensely personal and so utterly irrelevant that it should be withheld from discovery. Defendants may withhold these documents from discovery.

      Regarding the documents that are contended to be so intensely personal and so utterly irrelevant that they should be withheld from discovery, each document that has an "N" on the same line (in the third column) as the Doc ID number for that document on the Attachment that is attached hereto is not so intensely personal and not so utterly irrelevant that it should be withheld from discovery. Defendants shall produce these documents to the plaintiffs.

      Done and signed this April 11, 2013

                                    By the Special Master:

                                    */s/ William A. Martinez*_____
                                    William A. Martinez