IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02868–MSK–KMT


L-3 COMMUNICATIONS CORPORATION, and
L-3 SERVICES, INC.,

       Plaintiffs,

v.

JAXON ENGINEERING & MAINTENANCE, INC.,
JONI ANN WHITE,
RANDALL K. WHITE,
SCOTT WHITE,
SUSAN RETTIG,
CHARLES RETTIG,
JAMES YOUNGMAN,
JERRY LUBELL,
KELLY RICE,
JOHN MCCLURE, and
JOHN DOES 1-25, said names being fictitious as such names are unknown at this time,

       Defendants.
_____

**SECOND REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER**
_____

       This matter came before the Special Master pursuant to an Order dated November 12, 2013 by Magistrate Judge Kathleen M. Tafoya in the above captioned matter. Magistrate Judge Tafoya appointed the Special Master for the purpose of conducting an *in camera* review of documents and making determinations on documents on certain issues. Pursuant to the Order, the Special Master has reviewed the documents and the appropriate pleadings. The Special Master is fully advised on this matter and is ready to enter this SECOND REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER (hereinafter sometimes referred to as "Second Report and Order of Special Master").

1

**REPORT AND FINDINGS OF FACT**

On September 27, 2013 Judge Marcia S. Krieger entered an order clarifying which claims of privilege still needed to be ruled upon. Judge Krieger further ordered that the Magistrate Judge (or such Special Master as she may direct) shall promptly consider and rule on certain unadjudicated claims of privilege.

On November 12, 2013 Magistrate Judge Tafoya entered an Order Continuing Appointment of Special Master William A. Martinez as the Special Master in this case for purposes of reviewing *in camera* the documents described in the September 27, 2013 order of Judge Krieger. Magistrate Judge Tafoya further ordered that the Special Master may review the objections to his April 11, 2013 report, and to the extent he finds them relevant may reconsider his findings and rulings on documents. Magistrate Judge Tafoya further ordered that the Special Master shall issue a report and order concerning the documents. Thus, the Special Master is hereby issuing this Second Report and Order of Special Master.

Defendants initially filed three privilege logs and placed them in a database with Iris Data Services (Iris). The initial privilege logs listed more than 17,000 documents. After the Special Master issued his April 11, 2013 REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER defendants placed four additional privilege logs in the database. There are now seven privilege logs in the database which contain about 21,937 documents. The Special Master has received the training on how to open and review the privilege logs that are in the database. The Special Master has reviewed the documents that the defendants contend to be subject to the spousal privilege and attorney-client privilege. Also, the Special Master has reviewed the documents that the defendants contend should be withheld based on claims of privacy and the work-product doctrine. These claims of privacy and the work-

product doctrine are in this Second Report and Order of Special Master and in the database referred to as privileges even though the claim of privacy is not technically a claim of privilege and even though the work-product doctrine is not always technically classified as a privilege. The Special Master is ready to enter a report and order regarding these documents. As directed by court order, the Special Master did not consider the claims of accountant-client privilege. As directed by court order, the Special Master did not consider the claims of privilege that were withdrawn or no longer claimed as noted by defendants' indication in the defendants' privilege logs by way of the designation of "No Privilege/challenge." Also, on the first three privilege logs the Special Master did not consider and enter a new ruling on documents that he had already "accepted" as being privileged because they were already adjudicated and found to be privileged.

Attached to this SECOND REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER and incorporated herein is a document (Exhibit 1 to Order of Special Master) with five columns listing all of the documents by Doc ID number from the seven privilege logs in the same order as they appear in the seven privilege logs that are in the database, starting with the documents in the first privilege log and ending with the documents in the seventh privilege log. In the first column the documents are numbered from 1 to 21,937. In the second column the Doc ID number is listed. In the third column the initial claimed privilege is listed under "Tag-Claim." In the fourth column the defendants' reassessment of its claimed privilege is listed. In the fifth column the new ruling of the Special Master is listed. The new rulings are rulings that needed to be made pursuant to the November 12, 2013 order of Magistrate Judge Tafoya. The previous rulings of the Special Master remain in full force and effect except as modified by this Second Report and Order of Special Master. On the documents that are claimed to be privileged the Special Master has placed in the fifth column either a "Y"

for "yes" or an "N" for "no" for the documents upon which a new ruling needed to be entered. The "Y" means that the document is subject to the claimed privilege and the document should be withheld from production. The term "N" means that the Special Master finds that the document is not subject to the claimed privilege and the document should not be withheld from production. Also, it should be noted that the term "N" means that there is insufficient credible evidence to show that the document is covered by the privilege claimed by the defendants.

In the database when a document is claimed to be subject to a privilege the Special Master also considered the documents contended to be "family member of withheld document." Such documents are within the group of documents, which are generally attached to or filed at the same time as the main document that is claimed to be privileged. The Special Master inferred from this that defendants are claiming that the documents labeled as "family member of withheld document" are also privileged based on the same reason that they are asserting for the main document in the group.

It should be noted that the defendants furnished not only privilege logs but also a copy of the documents they contend to be subject to the privileges. This is notable because in many of the reported cases that talk about privilege the judge is ruling just based on the privilege log. The Special Master in this case was not limited to just reviewing the privilege logs; he also was able to view the documents that are contended to be privileged.

With regard to pleadings, when the defendants showed that they were exchanging unfiled pleadings with their attorney for discussion the Special Master generally found these pleadings to be privileged. However, when the pleadings were signed and sent or filed as shown by a certificate of mailing the Special Master generally found these pleadings not to be privileged since they were not intended to be confidential and were sent or filed.

With regard to e-mails with direct communication between clients and attorney about the subject matter of the litigation, the Special Master generally found these e-mails to be subject to the attorney-client privilege or work-product doctrine. With regard to e-mails on the subject matter litigation between clients or between corporate employees with attached forwarded e-mails from an attorney the Special Master generally found these to be subject to the attorney-client privilege or work-product doctrine. With regard to e-mails about the litigation but without forwarded e-mails from an attorney, the Special Master found that these e-mails are generally subject to the attorney-client privilege or the work-product doctrine if they were meant to be confidential and were made for the purpose of obtaining legal advice, made in anticipation of litigation or made for trial.

Pursuant to the November 12, 2013 order of Magistrate Judge Tafoya the Special Master was required to consider certain documents that are contended to be subject to the work-product doctrine, spousal privilege, attorney-client privilege or "so intensely personal and so utterly irrelevant that they should be withheld from production." Defendants did use the terms "attorney-client privilege," "work-product" and "Spousal." However, when claiming that the documents were "so intensely personal and so utterly irrelevant that they should be withheld from production" the defendants apparently used the terms "Privacy" or "Private." The Special Master finds that when the defendants used the terms "Privacy" or "Private" they meant to contend that the documents were "so intensely personal and so utterly irrelevant that they should be withheld from production," and the Special Master has treated the contentions as such.

As indicated above, the November 12, 2013 order of Magistrate Judge Tafoya ordered that the Special Master may review the objections to his April 11, 2013 report and to the extent he finds them relevant may reconsider his findings and rulings on documents. The vast majority

of defendants' objections have to do with rulings of the Special Master on documents that have duplicates when he ruled one way on a document and another way on duplicates of that document. Inconsistent rulings by the Special Master have occurred due to the way documents are presented in the privilege logs in the database. In the database sometimes documents don't appear to be privileged, but in other places in the database the duplicates of those documents are shown to be privileged. Many times a document appeared in the database without sufficient information and explanation about the purpose or use of the document to show that the document was privileged, which caused the Special Master to find that the document was not privileged. At other places in the database a duplicate of said document appeared with sufficient information and explanation about the purpose or use of the document to show that it was privileged, which caused the Special Master to find that it was a privileged document. Furthermore, sometimes it became apparent to the Special Master that certain documents are privileged after reviewing numerous related documents in the database. Moreover, in this case it was difficult for the Special Master without the benefit of a special computer program to determine whether numerous documents were duplicates of other documents, especially when documents had a huge amount of data within documents. Pursuant to the request of defendants, Iris has recently used a reliable computer program to determine and report on which documents in the database are duplicates of other documents in the database. Considering these factors and all other relevant evidence herein the Special Master is ready to make a ruling with regard to the objections of defendants to the extent that said objections are related to the inconsistent rulings on duplicates of documents that the Special Master has "accepted" (found to be privileged).

Ruling on Objections Regarding Inconsistent Rulings on Duplicates Contained in Exhibit 2A and Exhibit 1A, which are attached to DEFENDANTS' OBJECTION TO REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER

Defendants' objections regarding inconsistent rulings on duplicates are located in DEFENDANTS' OBJECTION TO REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER (Document 657). Defendants' objections regarding inconsistent rulings on duplicates as noted in Exhibit 2A and Exhibit 1A, which are attached to DEFENDANTS' OBJECTION TO REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER, should be and hereby are sustained. That is, wherever it is indicated on Exhibit 2A or Exhibit 1A that the Special Master accepted a document as being privileged the duplicate or duplicates (the duplicate or duplicates as indicated in Exhibit 2A or Exhibit 1A) of said accepted document are hereby found to be privileged and defendants do not need to turn over to plaintiffs said duplicates. This part of the order regarding inconsistent rulings on duplicates supersedes any inconsistent rulings of the Special Master (including the April11, 2013 ruling of the Special Master and including the other parts of this order).

## CONCLUSIONS OF LAW

*Attorney-Client Privilege*

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Its purpose is to encourage full and frank communication between attorneys and their clients, and thereby promote broader public interests in the observance of law and administration of justice. *Id.* at 389. The privilege recognizes that sound legal advice or advocacy serves public ends and

that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Id.* at

389. The lawyer-client privilege rests on the need for the advocate and counselor to know all that

relates to the client's reasons for seeking representation if the professional mission is to be

carried out. *Id*. at 389.

The attorney-client privilege protects from discovery communications made in

confidence between the client and the attorney. *EEOC v. Outback Steakhouse of Florida, 251*

*F.R.D*. 603, 610 (D. Colo. 2008).  The party asserting the attorney-client privilege has the burden

of establishing that the attorney-client privilege applies to specific information or documents. *Id.*

at 610.

Under federal common law, the attorney-client privilege arises "(1) where legal advice of

any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the

communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his

instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless

the protection is waived."  *Roe v. Catholic Health Initiatives Colorado,* 281 F.R.D 632, 636 (D.

Colo. 2012) (Tafoya, J.).  *See also Williams v. Sprint/United Mgmt. Co.,* No. 03-2200-JWL-

DJW, 2006 WL 266599, at 2 (D. Kan. Feb. 1, 2006).

A party may be able to successfully demonstrate that the attorney-client privilege applies

to communication between corporate employees by showing that the communication was made

in confidence for the primary purpose of obtaining legal advice. *See Eutectic Corporation v.*

*Metco, Inc*., 61 F.R.D. 35 (E.D.N.Y. 1973) at 39-40. *See also Williams v. Sprint/United Mgmt.*

*Co*., No. 03-2200-JWL-DJW, 2006 WL 266599, at 4 (D. Kan. Feb. 1, 2006).

However, the privilege does not protect underlying facts contained within attorney-client communications. *Upjohn*, 449 U.S. at 395-96. Moreover, simply having a document that is not privileged attached to a legitimately privileged document does not make the unprivileged document privileged; furthermore, simply sending a document that is not privileged to a lawyer does not make that document privileged. *See Williams v. Sprint/United Mgmt. Co.,* 245 F.R.D. 660, 670 (D. Kan. 2007).

The attorney-client privilege applies to corporations as well as individuals.  *Upjohn,* 449 U.S. at 390. However, in the *Upjohn* case the Supreme Court recognized that the administration of the attorney-client privilege in the case of corporations presents special problems and that as an inanimate entity a corporation must act through agents. In the corporate setting, the attorney-client privilege extends to communications between corporate counsel and corporate agents, ranging from upper echelon management to other employees acting within the scope of their corporate duties when the communications are made for the purpose of obtaining legal advice. *Upjohn,* 449 U.S. at 394-397.

### *Federal Work-Product Doctrine*

The work-product doctrine is broader than the attorney-client privilege.  *In re Sealed Case*, 676 F.2d 793, 808-809 (D.C. Cir. 1982).  Work-product immunity derives from the provisions of Fed. R. Civ. P. 26(b)(3), which provides in relevant part:

(3) Trial Preparation: Materials

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

*See American Banker's Ins. Co. of Fla. v. Colo. Flying Academy, Inc.*, 97 F.R.D. 515, 516 n.1 (D. Colo. 1983) (noting that Rule 26(b)(3) codifies the work product doctrine recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947).

The work-product doctrine's purpose is to shelter the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. *U.S. v. Nobles,* 422 U.S. 225, 238 (1975). It is an intensely practical doctrine, grounded in the realities of the litigation in our adversary system. *In re Qwest Communications,* 450 F.3d 1179, 1186. The work product doctrine exists to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. *U.S. v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

*Scope of Privilege*

A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential. *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998). However, the work product doctrine is applicable even if the documents at issue were not prepared in the course of ongoing litigation against the specific party seeking production of that document. *See Hercules Inc. v. Exxon Corp.,* 434 F. Supp. 136, 151 (D. Del. 1977) (recognizing the fact that litigation may still be a contingency at the time the document is prepared has not been held to render the work product privilege inapplicable, if the prospect of litigation is identifiable because of claims that have already arisen).

There are two kinds of protected work product: fact (or non-opinion) work-product and opinion work product. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.,* 136 F.3d 695 at 704 n.12.  (10th Cir. 1998).  Disclosure of fact work product may only be obtained by a third party who satisfies the substantial need/undue burden test by demonstrating (1) a substantial need for the material; and (2) an inability to develop the information otherwise without undue hardship. *See id.* at 702 - 703.  In contrast, opinion work product is subject to enhanced and heightened protection. *See, e.g., In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 663 (3d Cir. 2003) (opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances); *In re Sealed Case,* 676 F.2d at 809-810 (to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification); *cf. Upjohn v. US*, 449 U.S. 383, 401 (holding that opinion work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship).

Because the work-product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning creation of work product or facts contained within work product. *See Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir. 1995).  Thus, work product does not preclude inquiry into the mere fact of investigation. *Id.*

*Waiver*

Because the work-product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, the work-product privilege is not automatically waived by any disclosure to a third party. *In re Sealed Case*, 676 F.2d 793, 809, The purposes of

the work-product privilege are more complex than the attorney-client privilege, and they are not

inconsistent with selective disclosure, even in some circumstances to an adversary. *Id*. at 818.

### Federal Spousal Communications Privilege

In a civil case based on a federal cause of action, questions of privilege are governed by

federal common law as interpreted by the court in light of reason and experience. *Hawkins v.*

*Stables,* 148 F.3d 379, 382 (4th Cir. 1998) (quoting Fed. R. Evid. 501).

Under federal common law, two types of spousal privilege exist: the confidential marital

communications privilege, which protects confidential communications between spouses, and

the adverse spousal testimony privilege, which protects spouses from being required to adversely

testify against their spouse.  *See Trammel v. U.S.,* 445 U.S. 40, 51-53 (1980).  *In Wolfle v. U.S.*,

291 U.S. 7 (1934), the Supreme Court recognized the privilege in confidential marital

communications and noted that the basis of the privilege, the protection of confidential marital

communications, was so essential to the preservation of the marriage relationship as to outweigh

the disadvantages to the administration of justice which the privilege entails.  *Id.* at 14.

Federal courts have indicated that only the marital communications privilege applies in

civil proceedings. *See S.E.C. v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997).

#### Elements of Marital Communications Privilege

There are three prerequisites for establishing the marital communications privilege: (1) a

valid marriage at the time of the communication; (2) the privilege applies only to utterances or

expressions intended by one spouse to convey a message to the other; and (3) the communication

must have been made in confidence, which is presumed.  *See, e.g., U.S. v. Montgomery*, 384 F.3d

1050, 1056 (9th Cir. 2004); *In re Reserve Fund Securities and Derivative Litigation*, 275 F.R.D.

154, 157 (S.D.N.Y. 2011).

Federal Rule of Civil Procedure 26(b)(1) provides for access to all information relevant

to the subject matter involved in the pending action unless the information is privileged. *Baldrige*

*v. Shapiro,* 455 U.S. 345, 360 (1982) (quoting Fed. R. Civ. P. 26(b)(1). If a privilege exists,

information may be withheld, even if relevant to the lawsuit and essential to the establishment of

a plaintiff's claim. *Id.*  Privileges further the administration of justice and should not be set aside

lightly. *McNeil-PPC, Inc. v. Procter & Gamble Co*., 138 F.R.D. 136, 138 (D. Colo. 1991).

However, privileges also have the effect of withholding relevant information from the finder of

fact, and for that reason should be narrowly construed.  *See Montgomery v. Leftwich, Moore &*

*Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995).

*Waiver*

The marital communications privilege, like all other privileges, is subject to waiver.  The

Supreme Court has noted that marital communications are presumed to be confidential, but if the

nature and circumstances surrounding the communication show that it was not intended to be

confidential, then the communication is not privileged.  *In Wolfle v. U.S*., 291 U.S. 7, 14 (1934).

Specifically, communications which are made in the presence of a third party are not confidential

and thus, are not privileged.  *Id.*  Further, conversations between a husband and wife about

crimes in which they conspire or participate or, after the fact, participate in, are not privileged

marital communications. *U.S. v. Neal*, 743 F .2d 1441, 1447 (10th Cir. 1984).

In the context of email communications, the third element of the privilege is most often at

issue: whether the spousal email communication was made in confidence. Where emails are sent

via a work email account or computer, courts often rely on *Wolfle's* pronouncement that the

nature and circumstances surrounding a communication must be considered, and thus look to

such factors as whether the employee was on notice that emails would be monitored, whether the

employer had a right of access to the computer or emails, whether an employer email policy

forbade personal use of the account or computer, or whether the employee took any steps to

protect the communication.  *See, e.g., In re Reserve Fund Securities and Derivative Litigation*,

275 F.R.D. 154, 157-165(S.D.N.Y. 2011).  Thus, for example, the Fourth Circuit, while

recognizing a general expectation of privacy in email in this day and age, recently found the

district court did not abuse its discretion in concluding emails sent through a work email account

were not protected by the privilege where the spouse was on notice his accounts were subject to

search but did not take any efforts to protect allegedly privileged material.  *U.S. v. Hamilton*, 701

F.3d 404, 407-409 (4th Cir. 2012).

## ORDER

IT IS THEREFORE ORDERED as follows.

Regarding the documents (documents that needed a new ruling as indicated by the orders

of Magistrate Judge Tafoya and Judge Krieger) that defendants claim they have a right to

withhold from disclosure based on claims of privilege (by claims of privacy, attorney-client

privilege, work-product doctrine or spousal privilege) each document that has a "Y" on the same

line (in the fifth column) as the Doc ID number for that document on the Exhibit 1 to Order of

Special Master is subject to the claimed privilege. Defendants may withhold these documents

from discovery.

Regarding the documents (documents that needed a new ruling as indicated by the orders

of Magistrate Judge Tafoya and Judge Krieger) that defendants claim they have a right to

withhold from disclosure based on claims of privilege (by claims of privacy, attorney-client

privilege, work-product doctrine or spousal privilege) each document that has an "N" on the

same line (in the fifth column) as the Doc ID number for that document on the Exhibit 1 to Order

of Special Master is not subject to the claimed privilege. Defendants shall produce these documents to the plaintiffs.

Defendants' objections regarding inconsistent rulings on duplicates as noted in Exhibit 2A and Exhibit 1A to DEFENDANTS' OBJECTION TO REPORT, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF SPECIAL MASTER should be and hereby are sustained. That is, wherever it is indicated on Exhibit 2A or Exhibit 1A that the Special Master accepted a document as being privileged and there is a duplicate or are duplicates of said accepted document the duplicate or duplicates (the duplicate or duplicates as indicated in Exhibit 2A and Exhibit 1A) of said accepted document are hereby found to be privileged and defendants do not need to turn over to plaintiffs said duplicates. This part of the order regarding inconsistent rulings on duplicates supersedes any inconsistent rulings of the Special Master (including the April 11, 2013 ruling of the Special Master and including the other parts of this order).

Done and signed this January 12, 2014.

By the Special Master:

*/s/ William A. Martinez*_____
William A. Martinez