**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| L-3 Communications Corporation, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 10-cv-2868-MSK-KMT |
| v. | ) | |
| | ) | |
| Jaxon Engineering & Maintenance, Inc. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**THIRD PARTY FITCH, EVEN, TABIN & FLANNERY LLP'S OPPOSITION
TO
JAXON'S MOTION TO COMPEL PRIVILEGED INFORMATION FROM L-3'S LAWYERS (DKT NO. 1098)**

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ................................................................................................................ 1

II.     THE COURT SHOULD DENY JAXON'S MOTION AS UNTIMELY ..................... 1

III.    JAXON'S UNTIMELY MOTION SEEKS INFORMATION THAT IS
        PRIVILEGED AND ATTORNEY WORK PRODUCT ................................................. 6

        A.      Per Agreement Of The Parties, The Court Should Apply Northern District Of
                Illinois Case Law .......................................................................................................... 7

        B.      Communications Between Fitch Even And L-3 Are Privileged;
                Communications Relating To This Lawsuit Or To The Reexaminations Are Also
                Protected Work Product ............................................................................................. 7

        C.      It Is Improper For Jaxon To Seek Discovery From Fitch Even As A Proxy For
                Our Client L-3, Jaxon's False Characterization Of The Phinney Declaration
                Notwithstanding ........................................................................................................... 9

        D.      Fitch Even's Mental Impressions Are Privileged And Attorney-Work Product,
                As Are Fitch Even's Reexamination Files ............................................................. 12

        E.      Jaxon Agreed Not To Require the Parties to Prepare An Ongoing Privilege
                Log And Fitch Even Should Not Be Compelled To Do So Either ..................... 14

IV.     CONCLUSION ................................................................................................................ 15

**I.     INTRODUCTION**

Nine months ago, when served with Jaxon's subpoena, Fitch Even promptly produced thousands of pages of non-privileged documents, and duly served written objections to Jaxon's untoward demand that we also produce privileged information. Fitch Even also tendered a witness as to non-privileged information. Despite its claims to the contrary, the purposes of Jaxon's motion are to seek discovery of L-3 privileged communication and work product, and to probe the mental impressions of its opposing counsel.

Fitch Even is a law firm, and L-3 is one of our clients. We are actively handling concurrent reexamination proceedings initiated by Jaxon to attack the patents in suit in the U.S. Patent & Trademark Office, and we are adverse to Jaxon in those proceedings. Our communications with L-3 and with other L-3 lawyers are unquestionably privileged, and our working files and analyses constitute attorney work product. We have produced non-privileged documents and proffered a witness on nonprivileged topics, and Jaxon is not entitled to anything else. The Phinney declaration that Jaxon makes so much of in its motion is a complete red herring and does not alter the protected status of Fitch Even's work product. Jaxon's motion mischaracterizes Dr. Phinney's analysis in a misplaced effort to justify a fishing expedition into Fitch Even's mental impressions, working papers, and attorney-client communications.

All of the issues Jaxon raises in its motion to compel arose last December, and Jaxon could have filed its motion then. Instead, Jaxon inexplicably delayed filing until the end of March. When the parties then agreed that this Court should hear the motion, Jaxon refused to simply refile its motion in this Court, instead insisting on a formal transfer procedure that Jaxon knew would introduce additional months of unnecessary delay. The court should deny Jaxon's motion both because it is untimely, has not been diligently pursued, and because it lacks substantive merit.

**II.    THE COURT SHOULD DENY JAXON'S MOTION AS UNTIMELY**

Fitch Even prosecuted the '916 and '989 patents that L-3 asserted in this lawsuit. In parallel with this lawsuit, Jaxon initiated *inter partes* reexamination proceedings against L-3 in

1

the U.S. Patent & Trademark Office ("USPTO").  Fitch Even represents L-3 in those USPTO proceedings adversely to Jaxon.  The reexamination proceedings are closely related to the patent issues in this lawsuit, and for this reason we have necessarily worked with L-3's litigation counsel.  For example, they have provided us with non-confidential information from the lawsuit, which as L-3's reexamination counsel we may be required to file in accordance with L-3's duty of disclosure (*see* 37 C.F.R. 1.56).  In short, we are Jaxon's opposing counsel, even though we have not appeared in this civil action. We are aligned with L-3's litigation counsel, commonly representing L-3 in support of the validity of its patents.

We are aware that the Court entered a Protective Order that precludes Fitch Even from accessing Jaxon's confidential documents or testimony for use in the reexamination.  We hereby represent that we have never sought access to any Jaxon confidential materials from any source.  Jaxon intimates otherwise in its motion, but Jaxon is wrong.  We further represent that, to our knowledge, L-3's litigation counsel has never provided us with any Jaxon confidential materials, and that, to our knowledge, we have never otherwise obtained any Jaxon confidential materials.

On October 24, 2013, Jaxon served Fitch, Even with a subpoena *duces tecum* (Ex. 2 to Jaxon's motion).  Fitch Even promptly responded in writing on November 7, 2013 (Ex. 1 hereto) indicating that, subject to privilege and work product objections, we would produce documents in response to most of Jaxon's requests, and that we had no documents responsive Request 5. Request 6 expressly demanded privileged information, seeking "All Documents and things relating to this lawsuit, including but not limited to all communications to or from you and/or communications to or from any third parties, *including L-3, and/or any inventors*, and all Documents relating or referring to any such communications" (emphasis added).  We promptly objected to this request on the basis of privilege and work product.

On December 3, we produced over 2,000 pages of responsive documents.  Consistent with the objections we raised in our formal response to the subpoena, we did not produce our working file for the ongoing reexamination proceedings initiated by Jaxon.  We produced a

2

privilege log for documents predating the reexaminations and objected to the production of a privilege log for our ongoing work in the reexaminations.

Jaxon served no further document subpoena on Fitch Even and we have made no further production. Therefore, all of the substantive issues presented in Jaxon's motion – *i.e*., whether Fitch Even's communications with L-3 are privileged, whether our working file for the reexaminations is work product, and whether we should be forced to provide a privilege log for our ongoing reexamination work – were ripe for review several months ago, on December 3.

On December 4, Jaxon served Fitch Even with a second subpoena, this one a Rule 30(b)(6) deposition subpoena, followed by an amended subpoena on December 10 (Ex. 2). As with Jaxon's document subpoena, many of Jaxon's noticed topics sought to elicit attorney-client privileged information or work product. Topic 1, for instance, called for Fitch Even's "investigation or analysis as to validity, enforceability, or infringement of the Asserted Patents." Topic 6 called for "Communications to or from you and/or communications to or from any third parties, *including L-3, and/or any inventors* relating to this lawsuit or the pending *inter partes* reexaminations" (emphasis added). And so on.

We duly served a formal written response to Jaxon's subpoena on January 9, 2014 (Ex. 3). In that response, we proffered a witness to the extent that Jaxon's subpoena called for testimony other than privileged information or work product. But we maintained the same privilege and work product objections that we had earlier raised for the document subpoena.

The parties had mutually agreed to reschedule the deposition for January 14. On January 10, Jaxon unilaterally canceled the scheduled deposition (Ex. 4).

Fitch Even submitted in the USPTO a declaration of Dr. Joshua Phinney. Upon discussions with Jaxon, we earlier offered to allow Jaxon to depose Fitch Even on the background of the Phinney declaration (who prepared it, when was it prepared, etc.), so long as Jaxon promised not to inquire into Fitch Even's mental impressions. Jaxon refused (Ex. 5).

After several meet-and-confer efforts, Mr. Chambers, one of L-3's former litigation attorneys, advised Jaxon on February 5 that Jaxon had by then exhausted the number of hours of

3

30(b)(6) deposition time available and that L-3 would not participate in any deposition. Fitch Even nevertheless invited Jaxon to contact us if Jaxon obtained the necessary discovery enlargement of time or if continued discussions with L-3 reached a contrary conclusion (Ex. 6).

To our knowledge Jaxon never sought a discovery enlargement. Instead, Jaxon inexplicably waited until March 24 before filing a motion to compel in the Northern District of Illinois (the Chicago court having jurisdiction over Fitch Even). Jaxon did not contact us before filing this motion to see whether we would be willing to have this Court address its motion.

Under Northern District rules, a party who files a motion must also "notice" the motion for presentment before a judge. Jaxon failed to notice its motion and its filing did not comport with the local rules in other respects. Accordingly, Jaxon's motion was never placed in queue for consideration by a judge. We waited two weeks, but Jaxon still failed to notice its motion.

On April 10, we suggested that Jaxon dismiss the Illinois proceeding and refile its motion in this Court (Ex. 7). We told Jaxon that, subject to certain benign conditions, we would not oppose this Court's jurisdiction over Fitch Even for purposes of resolving this motion.

Jaxon agreed that this Court should resolve the motion and agreed to the conditions we requested. Inexplicably, though, Jaxon refused simply to refile the motion here. Instead, Jaxon insisted that Fitch Even file a Rule 45 motion to transfer Jaxon's motion to this Court. We repeatedly warned Jaxon that this would likely add substantial delay to the process, and continued to urge Jaxon to simply refile its motion in this case. But Jaxon maintained its insistence that we stick to the formal Rule 45 procedure (*see* Ex. 7).

In the meantime, Jaxon appeared before this Court on April 24. The transcript of this hearing (excerpted at Ex. 8) reflects this exchange:

MS. ROBERTS: . . . . **The fact discovery period is already closed**. ...

...

THE COURT: …**Fact discovery cutoff is long gone, but we're extending it -- just for the purposes of the [Jaxon] 30(b)(6) deposition**. So we won't -- I won't really change the cutoff there. **It's just extended for that one purpose** which will be the 13th and 14th. Okay. Everybody satisfied now with the schedule?

4

> MR. LEVITT: Yes, Your Honor.
>
> THE COURT: Defendants?
>
> MS. BRZEZYNSKI: **Yes**.

Ex. 8 at 113-14 (emphasis added). The Court entered an order that day specifying in pertinent part: "Discovery deadlines are extended as follows: Fact discovery extended to May 16, 2014 for the **SOLE** purpose of taking the deposition of the Rule 30(b)(6) witness for Jaxon" (emphasis original). Although Jaxon knew that there was a pending motion to compel against Fitch Even, and although Jaxon knew that that motion would make its way to this Court, Jaxon made no effort to inform the Court of its motion and filed no objection to the Court's order.

After some delay due to scheduling conflicts for both Jaxon's lawyers and the responsible Fitch Even attorney, Allen Hoover, we filed an agreed Rule 45 motion on May 2. The Illinois court granted the motion to transfer on May 5, 2014. But, as we had advised Jaxon, the transfer was not instantaneous; it took the clerk of that court until May 28 to effectuate the transfer. Unfortunately, although the parties had agreed to transfer the motion to the docket of this lawsuit for consideration by Judge Tafoya, the clerk of this Court opened a new civil action (14-cv-1504), and assigned that action to Judge Shaffer.

On June 4, Fitch Even moved to dismiss the miscellaneous -1504 case or to transfer it to Judge Tafoya. Judge Shaffer held a status hearing on July 1, at which he directed Jaxon to refile its motion in this case – exactly as we had suggested to Jaxon months before.

We have now had about eight months of litigation over Jaxon's subpoenas to Fitch Even, the majority of that time being the result of delays by Jaxon. At some point, enough is enough. Jaxon has not been diligent in bringing this issue before the court, increasing the burden on Fitch Even as a third party by complicating and multiplying the proceedings. Jaxon could have raised all of the substantive issues in its motion in December, and Jaxon was told in January that it had exhausted its 30(b)(6) deposition time. Yet Jaxon waited months before finally filing its motion. Then Jaxon refused to simply refile its motion in this Court, instead insisting on a Rule 45 motion that it knew would introduce months of additional unnecessary delay. In the meantime,

Jaxon told this Court "The fact discovery period is already closed." Given Jaxon's repeated delays on this motion and its waiver of further discovery at the April 24 hearing, we object to having to provide any further discovery. The produced file is all Jaxon truly needs.

### III. JAXON'S UNTIMELY MOTION SEEKS INFORMATION THAT IS PRIVILEGED AND ATTORNEY WORK PRODUCT

Jaxon's contentions that it "does not . . . seek testimony regarding privileged or work-product information" and that it has given us "numerous examples of the non-privileged information it seeks" are inaccurate. As the demands in the subpoenas quoted above expressly show, and as explained in more detail below, Jaxon's subpoena requests and deposition topics fall into four categories, three of which expressly call for privileged information or work product, and the fourth for which we proffered discovery months ago:

- <u>Privileged Communications between Fitch Even and L-3.</u> Contrary to Jaxon's assertions, many of its requests and topics expressly purport to require Fitch Even to reveal privileged communications. For example, Topic 6 calls for "Communications to or from you and/or communications to or from any third parties, including L-3, and/or any inventors relating to this lawsuit or the pending *inter partes* reexaminations."

- <u>Deposition of Fitch Even as a Proxy for L-3</u>. Jaxon is improperly attempting to learn about L-3 corporate matters via discovery from Fitch Even. Fitch Even does not have direct knowledge of L-3's corporate matters, and the only information we would have on these topics would be via privileged attorney-client communications. It is improper for Jaxon to seek such discovery through its opposing counsel.

- <u>Fitch Even's deliberations, mental impressions and analyses, and working files for the *inter partes* reexaminations</u>. Jaxon seeks Fitch Even's "investigation or analysis as to validity, enforceability, or infringement of the Asserted Patents," Fitch Even's working files for the '989 and '916 reexaminations, documents "reviewed, consulted, considered, or prepared" for the reexaminations, and a testifying witness. Under Rule 26 and *Hickman v. Taylor*, 329 U.S.

6

495 (1947), and under cases such as *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242 (N.D. Ill. 2000), it is well settled that such materials constitute protected work product.

- <u>Documents and information concerning the *ex parte* prosecution of the patent</u>. We produced all of the nonprivileged, responsive documents in our possession months ago, so there is no issue before the Court regarding our production. Also, we proffered a witness to the extent Jaxon's topics called for nonprivileged information as to Fitch Even's actions during the *ex parte* prosecution of the patents. There therefore should be no substantive dispute on these deposition topics either (although the parties disagree on Jaxon's untimeliness and waiver)

### A. Per Agreement Of The Parties, The Court Should Apply Northern District Of Illinois Case Law

In consenting to transfer the motion to this Court, Jaxon and Fitch Even stipulated that this Court should apply the case law as interpreted by the Northern District of Illinois. *See* agreed transfer motion at Ex. 9 ("The parties will request that, to the extent practicable and permissible, the Colorado court apply Northern District of Illinois law in resolving Jaxon's motion."). Absent transfer, the Northern District would have applied its own decisions in its analysis of Jaxon's motion, and the parties agreed to preserve this status quo. Accordingly, if the Court does not reject Jaxon's motion outright based on its untimeliness, we respectfully request that the Court apply the Northern District cases cited herein, which clearly recognize the privileges and discovery immunities Fitch Even seeks to protect in this response.

### B. Communications Between Fitch Even And L-3 Are Privileged; Communications Relating To This Lawsuit Or To The Reexaminations Are Also Protected Work Product

Jaxon's subpoena Request 6 calls for "All Documents and things relating to this lawsuit, including but not limited to all communications to or from you and/or communications to or from any third parties, including L-3, and/or any inventors, and all Documents relating or referring to any such communications." Similarly, Topic 6 from Jaxon's deposition subpoena calls for testimony on "[c]ommunications to or from you and/or communications to or from any third parties, including L3, and/or any inventors relating to this lawsuit or the pending *inter*

7

*partes* reexaminations."[1]  For Topic 9 (documents produced by Fitch Even), we have proffered a witness on nonprivileged aspects of those topics, but Jaxon seeks to compel testimony "in full." In other words, Jaxon wants the Court to compel us to waive attorney-client privilege that attaches to any discussions of those documents.

These requests are manifestly improper.  As the Northern District of Illinois has observed, "The attorney-client privilege is the oldest of the recognized privileges for confidential communications known to the common law.  Deeply rooted in public policy, and playing a vital role in the administration of justice, it remains one of the most carefully guarded privileges and is not readily to be whittled down." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 414 (N.D. Ill. 2006) (citations omitted).  That court further observed that the "central concern" of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."  "Without that frankness," the court held, "sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable." *Id.*

There should be no legitimate dispute that the privilege applies to communications between Fitch Even and its client L-3, including the inventor-employees of L-3.  In discussions with Jaxon's counsel, though, Jaxon refused to concede even this point.  As recently as July 15, in a discussion with Fitch Even attorney Allen Hoover, Jaxon attorney Ms. Roberts suggested that there might be doubt whether Fitch Even could claim privilege in our communications with L-3.  Jaxon is wrong, and the Court should recognize L-3's attorney-client privilege with Fitch Even.

The attorney-client privilege also applies to communications between and among lawyers for L-3, for example, communications between Fitch Even and L-3's litigation counsel (the Pillsbury firm and before them Patton Boggs).  "[A]lthough communications between in-house

---

[1] Topics 4 and 5 from the deposition subpoena also called for testimony on "inventor interviews" and "communications with L-3" concerning two purported L-3 products.  Jaxon has withdrawn these portions of Topics 4 and 5, however.  *See* Jaxon Br. at 20 (limiting the scope of its motion).

8

counsel are not communications directly to or from the client, it appears implicit in present day litigation with multiple attorneys required for proper representation that attorneys must be allowed to confer with each other regarding the representation of a client on a privileged basis in the same way that clients must be able to discuss the advice of counsel amongst themselves on a privileged basis." *Stafford Trading, Inc. v. Lovely*, 2007 WL 611252 (N.D. Ill. 2007) (citation omitted) (copy at Ex. 11). As the Seventh Circuit (whose decisions govern the Northern District of Illinois) observed long ago in *Natta v. Zletz*, 418 F.2d 633, 637 n. 3 (7th Cir. 1969), "insofar as inter-attorney communications or an attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure. To hold otherwise merely penalizes those attorneys who write or consult with additional counsel representing the same client for the same purpose."

In *McCook Metals*, the Northern District addressed this issue squarely, and held that "it appears implicit in present day litigation with multiple attorneys required for proper representation that attorneys must be allowed to confer with each other regarding the representation of a client on a privileged basis in the same way that clients must be able to discuss the advice of counsel amongst themselves on a privileged basis." 192 F.R.D. at 255 (*following Natta v. Zletz*, and refusing to order production of communications between counsel).

Jaxon has no grounds to seek discovery of privileged communications between L-3's attorneys. Additionally, to the extent that our communications with other third parties relate to this lawsuit or to the pending reexamination proceedings, our communications with L-3, L-3's litigation counsel, and others constitute attorney work product, as discussed below.

### C. It Is Improper For Jaxon To Seek Discovery From Fitch Even As A Proxy For Our Client L-3, Jaxon's False Characterization Of The Phinney Declaration Notwithstanding

In response to Jaxon's document subpoena, we produced nonprivileged, non-work product L-3 corporate records in our files. Jaxon's subsequent Topic 9 called for testimony concerning "Documents produced in response to the October 24, 2013 Subpoena." We proffered a witness "sufficiently to identify the documents produced in response to the October 24, 2013

9

subpoena" and "to testify on nonprivileged factual matters known to Fitch Even and contained in the document production."

In other respects, though, Jaxon's deposition topics are objectionable because they expressly call for us to reveal information that we could know only via privileged communications from L-3.  Specifically, Jaxon wants Fitch Even to testify on the following:

- "The conception and reduction to practice of the purported invention . . . and the respective contributions of each person who conceived or reduce[d] to practice the purported inventions." [Topic 2]

- "L3's E2 pulser" [Topic 4] and "L3 's 1k E1 pulser" [Topic 5][2]

It is uncontested that Fitch Even has no independent knowledge of the above topics, because we did not ourselves devise L-3's inventions or design L-3's products.  Any information we have on these topics came via attorney-client privileged communications.

Jaxon, of course, has been able to seek discovery on these subjects directly from L-3, and we are advised that extensive discovery took place in this case. Jaxon's insistence that we provide L-3's corporate information on these topics is improper.  Courts strongly disfavor depositions of opposing counsel.  Such depositions "are almost always irrelevant and should be quashed." *Joslyn Corp. v. RTE Corp.*, 1988 WL 102104, at *1 (N.D. Ill. 1988). The Northern District of Illinois recognizes that such a deposition "provides a unique opportunity for harassment" because of the strong potential for disruption.  *Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.*, 257 F.R.D. 456, 464 (N.D. Ill. 2008).  Thus, the request to depose an opponent's attorney is a "drastic measure" with a "strong potential for abuse" that is to be viewed with a "jaundiced eye and is infrequently proper." *M & R. Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992). In *Howard v. Securitas Security Services, Inc.*, 630 F. Supp. 2d 905 (N.D. Ill. 2009), the court observed that "the circuit courts considering this issue

---

[2] Jaxon appears to have dropped its demand for "Information concerning the first disclosure of the purported invention for each claim of the Asserted Patents . . . ." [Topic 3] and "The design of L3 's products covered by at least one claim of the Asserted Patents, the identification of such products . . . ." [Topic 8].

10

seem to hold generally that a deposition of opposing counsel should not proceed unless there is a strong showing of need and evidence that all other discovery avenues have been exhausted." *Id*. at 911 (following *Shelton v. American Motors Corp*., 805 F.2d 1323 (8th Cir. 1986) and quashing subpoena).

There is no reason Jaxon needs to depose Fitch Even on L-3's corporate knowledge. Fitch Even has no unique information on L-3's corporate knowledge – to the contrary, all L-3 corporate information known to us comes from our client. Mere relevance is insufficient to depose an attorney to obtain client information. Jaxon obviously has failed thus far to develop sufficient patent invalidity defenses, and that is why it now wants discovery on Topic 2 ("conception and reduction to practice of the purported invention"). But Jaxon should have asked L-3 about this information, not lawyers with only second-hand access obtained in privilege. Similarly, regarding Topics 4 and 5, Jaxon argues that the engineering drawings have "a date that fell more than one year prior to the filing date" of the '916 and '989 patents, thereby "making them relevant to an invalidity defense." If Jaxon wanted to develop an invalidity defense based on the dates of the L-3 engineering drawings, it could have asked L-3 about them while discovery was open. Fitch Even did not create these drawings. To require us to testify on such information would necessarily invade the attorney-client privilege, and would be a "drastic measure" with a "strong potential for abuse." L-3 has not deposed the McKenna Long firm on Jaxon's corporate information, and likewise Jaxon should not be permitted to seek L-3 corporate information from Fitch Even.

Jaxon's motion makes much of a declaration filed by Dr. Joshua Phinney in the reexamination, and argues that a declaration submitted by Dr. Phinney provides grounds to vitiate work product immunity. Dr. Phinney is L-3's expert in this lawsuit. He observed that there was a clerical error in the background section of the patent ("kilovolts" should read "volts"). This error appears only in the background section of the patent, not in the claims (which specify "high voltage") or in the supporting description of the invention. As Dr. Phinney explains in his declaration: "This correction is apparent based on the implementations and

11

voltage levels described in the '989 specification (e.g., Figure 4 and col. 5:23-61), as well as the size of electrical systems that operate in the multi-megavolt regime." Ex. 4 to Jaxon's motion at p. 8 n.2.

Jaxon speculates that Dr. Phinney must have based his analysis of the "volts"/ "kilovolts" issue on his review of Jaxon's confidential information, and not on the plain teachings of the patent specification that Dr. Phinney identifies in his declaration. Jaxon calls Dr. Phinney's declaration "highly suspect." Yet Jaxon floats this innuendo *without having yet deposed Dr. Phinney*. More fundamentally, Jaxon's motion ignores the patent specification itself and raises no issue concerning Dr. Phinney's analysis of the specification, nor his conclusion that the specification states the voltage range correctly in describing the invention. Based on Jaxon's fabricated assumption, uninformed by Dr. Phinney's testimony and misrepresenting the content of the Phinney declaration, Jaxon asks the Court leap to the conclusion that L-3's lawyers conspired to violate the protective order. (An entirely implausible conspiracy given Jaxon's known scrutiny of the Phinney declaration).

Jaxon's trumped-up speculation relating to Dr. Phinney provides no justification for vitiating work product. The basis for Dr. Phinney's opinion is manifest in his declaration – he relied on the patent specification, not on any Jaxon confidential information. Jaxon appears to hope that the Court will overlook statements that Dr. Phinney actually makes in his declaration and instead find a conspiracy. Jaxon will have ample opportunity to confirm the absence of any protective order violation when it deposes Dr. Phinney in August, and in the meantime the Phinney declaration gives Jaxon no basis to vitiate privilege or work product.

### D. Fitch Even's Mental Impressions Are Privileged And Attorney-Work Product, As Are Fitch Even's Reexamination Files

Jaxon seeks to compel the following testimony and production:

- "any investigation or analysis as to validity, enforceability, or infringement of the Asserted Patents" and "communications with third parties" concerning the pending reexaminations [Topic 1]

12

- any drawings, photographs, or descriptions of L-3's [E2 and 1k pulsers] "reviewed or considered in preparation or prosecution of the application that issued as U.S. Patent No. 7,485,989." [Topics 4 and 5]
- "any documents reviewed, consulted, considered, or prepared in connection with the preparation or prosecution of the application; and any Prior art or potential Prior art." [Subpoena *duces tecum* Request 1]

For Topics 4 and 5 above, Jaxon expects the witness to describe Fitch Even's internal deliberations during the reexaminations concerning the L-3 pulsers. Jaxon also insists that Fitch Even produce our working file for the ongoing USPTO reexaminations.[3]

All of the above materials are protected work product. In *Oak Industries v. Zenith Electronics*, 687 F. Supp. 369 (N.D. Ill. 1988), the Northern District addressed a similar motion to compel an attorney's mental impressions in a pending patent reexamination. The court observed that "the reexamination involved the same central issue raised by this litigation, *i.e.*, the validity of the Harney patent." "Consequently," held the court, "whatever McEachran considered while representing Oak in the reexamination would certainly reflect Oak's legal strategies and positions in this case." *Id.* at 375. The court also observed that *Hickman v. Taylor*, the "seminal work product case," not only foreclosed document discovery but also precluded inquiry into these topics via deposition. *Id.* at 374.

In *McCook Metals*, the court rejected identical arguments and held that "immunity from discovery for an attorney's mental impressions, conclusions, opinions, or legal theories is absolute or nearly absolute." 192 F.R.D. at 259. The court observed that "documents produced in preparation for a patent reexamination proceeding when related litigation was subsequently initiated in the federal courts have been held to be made in anticipation of litigation." *Id.* at 260. The court reasoned that "regardless of whether the reexamination proceeding was initiated by a competitor or the patent holder, 'the reexamination proceeding is an adversarial proceeding,

---

[3] Jaxon appears to have dropped its demand for testimony as to "the basis for any belief that [L-3's] products are or are not covered by the Asserted Patents." [Topic 8]

13

similar to 'litigation', to which the work product doctrine applies.'" *Id.* (citations omitted). The court went on to hold papers in the *ex parte* prosecution file to constitute work product to the extent that they related to adversarial proceedings within the USPTO. *Accord Datatreasury Corp. v. Wells Fargo & Co.*, No. 2-06-cv-00072, slip op. at 4 (E.D. Tex. July 1, 2009) ("Work product doctrine typically applies to reexamination proceedings, particularly here where the reexamination is connected to litigation. . . .") (denying motion to compel) (copy at Ex. 12).

Jaxon's subpoena overtly seeks to compel Fitch Even to disclose our internal deliberations and mental impressions for ongoing client work as Topic 1 ("any investigation or analysis as to validity, enforceability, or infringement of the Asserted Patents"). Topic 1 seeks both Fitch Even's legal analysis and its work product investigations, including discovery of Fitch Even's communications with third parties for its work in the reexaminations. All of this is classic work product. So is Fitch Even's working file for the reexaminations, as are the remaining topics and materials sought by Jaxon. The Court should not permit Jaxon to seek to divulge the mental impressions or working files and other efforts of its opposing counsel.

### E. Jaxon Agreed Not To Require the Parties to Prepare An Ongoing Privilege Log And Fitch Even Should Not Be Compelled To Do So Either

Jaxon has dropped Topic 7 (which demanded testimony on "the bases for the individual entries" on Fitch Even's privilege log). But Jaxon insists that we provide an ongoing privilege log for the reexaminations. Jaxon wants this privilege log because it is fishing for evidence that it hopes will support a violation the protective order. We earlier suggested that Jaxon could simply ask us at deposition whether we had been exposed to any Jaxon confidential information, but Jaxon refused (Ex. 5). (As indicated above, we have not been exposed to such information.)

The Northern District of Illinois has no general rule on this point, and we recognize that contrary authority can be found. Nonetheless, as is commonly agreed, Jaxon and L-3 agreed to not log privileged communications after the start of the current litigation, and that agreement should extend to Fitch Even as well. *See* Ex. 10 (excerpt from transcript of July 15, 2013 hearing, where Jaxon acknowledges this agreement). Preparation of a post-litigation privilege

14

log would be makework, and the result would be entirely irrelevant. "In most litigations, counsel will agree to omit from the privilege log documents created by outside or in-house counsel after the litigation has commenced." *Grider v. Keystone Health Plan Central, Inc.*, 580 F. 3d 119, 139 n. 22 (3d Cir. 2009) (citation omitted). This is an eminently sensible rule – otherwise, as the litigation continues, each party might have to supplement its log almost daily as new privileged communications are generated. The *Grider* court further held that "We underscore that a privilege log may not be required for communications with counsel that take place after the filing of a law suit." *Id*. That is because "creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship." *Id.*

Exactly the same considerations apply to the reexamination. It would be unduly burdensome, and create a chilling effect on the attorney-client privilege, to force Fitch Even to generate an ongoing privilege log for its work in the reexamination. Jaxon's own agreement not to log post-litigation communications demonstrates that Jaxon itself recognizes the burden and chilling effect that this would cause. And Jaxon's unsupportable speculation that Dr. Phinney violated the protective order is not grounds for a fishing expedition into Fitch Even's privileged communications. In any case, the Court should hold Jaxon to its agreement on the privilege log.

## IV.    CONCLUSION

We have given Jaxon all of the documents, and have proffered a witness for all of the deposition topics, to which Jaxon is entitled. Jaxon's demand for further production and broader testimony would improperly pierce attorney-client privilege and would violate attorney work product immunity. And while we earlier proffered a witness on nonprivileged topics, Jaxon's undue delay and waiver precludes any deposition at this point. The Court therefore should deny Jaxon's motion in its entirety. Should the court reopen discovery and permit a deposition of Fitch Even, the court should limit any deposition to nonprivileged matters in accordance with our 30(b)(6) response and subject to the privilege and work product objections stated therein.

Date:  July 28, 2014                                    s/Steven C. Schroer

15

>Steven C. Schroer
>FITCH, EVEN, TABIN & FLANNERY LLP
>1942 Broadway, Suite 213
>Boulder, CO 80302
>Email: scschr@fitcheven.com
>Telephone: 303-402-6971
>
>Allen E. Hoover
>FITCH, EVEN, TABIN & FLANNERY LLP
>120 South LaSalle Street, Suite 1600
>Chicago, Illinois 60603
>Email: ahoover@fitcheven.com
>Telephone: 312-577-7000
>*Attorneys for Third-Party Fitch,
>Even, Tabin & Flannery LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2014, a copy of the foregoing will be caused to be filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

  s/Steven C. Schroer
*Attorney for Fitch, Even, Tabin & Flannery LLP*

1