IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.10-CV-02868-MSK-KMT

L-3 COMMUNICATIONS CORPORATION,
and L-3 SERVICES, INC.

       Plaintiffs,

       v.

JAXON ENGINEERING & MAINTENANCE, INC.,
JONI ANN WHITE,
RANDALL K. WHITE,
SCOTT WHITE,
SUSAN RETTIG,
CHARLES RETTIG,
JAMES YOUNGMAN,
JERRY LUBELL,
KELLY RICE,
JOHN MCCLURE,

       Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

In accordance with Fed. R. Civ. P. 26 and 45, L-3 opposes Defendants' ("Jaxon") Motion to Compel L-3 patent counsel Fitch, Even, Tabin & Flannery LLP ("Fitch Even") to produce additional documents and a witness in response to Rule 45 subpoenas Jaxon served on Fitch Even (Doc. No. 1098).

## INTRODUCTION

Jaxon essentially seeks additional discovery from L-3 by demanding documents and testimony from Fitch Even in an adversarial patent reexamination proceeding. Knowing that it used up all of its document requests and 30(b)(6) deposition time against L-3, Jaxon would bypass those Court-ordered limitations by seeking documents and testimony from Fitch Even as a

third party, even though Fitch Even *only* could have learned the information Jaxon now seeks through its privileged discussions with L-3. Jaxon's claim that Fitch Even's thoughts, impressions and motivations relate to a *potential* inequitable conduct defense is a canard because Jaxon *never* pled that defense. Similarly, Jaxon's reference to a supposed Protective Order violation is unavailing. In fact, Jaxon has stated no viable justification for a second bite at the apple, especially in light of the consequences (including potential violations of the attorney-client privilege and work product) that discovery of L-3's reexamination counsel would entail. The Court should deny Jaxon's motion in its entirety.

## ARGUMENT

**1. Jaxon's Motion Seeks Documents or Testimony Unlikely to Lead to the Discovery of Admissible Evidence or Best Sought from Other Sources**

In ruling on a motion to compel, "[t]he district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case."[1] *Gile v. United Airlines*, 95 F.3d 492, 496 (7th Cir. 1996).[2] "Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling a district court should

---

[1] As Jaxon is seeking documents protected by L-3's attorney-client privilege and as Jaxon is accusing L-3's litigation counsel of violating the parties' protective order in this litigation, L-3 has standing to oppose Jaxon's motion to compel under Rule 45. "A party has standing to object to a subpoena directed at a nonparty when the party claims a 'personal right or privilege' regarding the documents sought." *Chaikin v. Fid. & Guar. Life Ins. Co.*, No. 02 C 6596, 2003 U.S. Dist. LEXIS 20630, at *2 (N.D. Ill. 2003) (internal citations omitted). Documents and testimony related to L-3's privilege and work product, as well as L-3's counsel's actions in this litigation, fall within this standard. Moreover, parties "have standing to challenge subpoenas…as irrelevant and overbroad under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45." *See, e.g.*, *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012) (collecting cases).

[2] As described in Fitch Even's opposition to the Motion to Compel, Fitch Even and Jaxon agreed that Seventh Circuit law, the law of the district where the original motion to compel was brought, would govern the Court's analysis on Jaxon's Motion. *See* Doc. No. 1113 ("Fitch Even Opposition") at 7.

2

independently determine the proper course of discovery based upon the arguments of the parties [and the applicable federal rules of civil procedure]." *Id.*[3]

"The Federal Rules of Civil Procedure provide that a court shall quash or modify a subpoena if it requires disclosure of privileged information or subjects a person to undue burden." *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 773 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 45(c)(3)(A)). Additionally, Rule 26(b) limits the scope of discovery to those materials that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial, but it must appear to be 'reasonably calculated to lead to the discovery of admissible evidence." *Id.* Thus, a subpoena will *only* be enforced if "it designates topics that are reasonably calculated to lead to admissible evidence." *See Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007); *see also id.* ("[t]he scope of production under a subpoena is the same as the scope for discovery generally under Rule 26" and "courts have 'wide discretion' in limiting the scope of discovery to topics of ultimate relevance").

Rule 26 also "vest[s] this Court with discretion to limit the 'frequency and extent' of discovery methods, where 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Taylor Mach. Works, Inc. v. Pioneer Distrib., Inc.*, No. 06-1126, 2006 U.S. Dist. LEXIS 94898, at *4 (C.D. Ill. June 19, 2006). Likewise, the Court may limit discovery where "the party seeking

---

[3] Contrary to Jaxon's argument (made without citation to any authority) that Fitch Even's objections to Jaxon's subpoenas were insufficient absent a motion to quash or a motion for protective order, *see* Doc. No. 1098 at 15, Fitch Even's objections were, in fact, sufficient to allow it to refuse to produce the requested documents or witnesses. Once Fitch Even made its objections, Jaxon then had the option of moving to compel if it still sought the discovery at issue. *See Gile*, 95 F.3d at 496 ("Where the party from whom the documents are requested objects to the request, the party seeking the request may move for an order to compel production.").

3

discovery has had ample opportunity by discovery in the action to obtain the information sought" or where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2); *see also aaiPharma*, 361 F. Supp. 2d at 773. Here, Jaxon only seeks irrelevant documents and documents that are either cumulative or better obtained from L-3 or its experts, rather than L-3's counsel in a related adversarial proceeding.

**2.      Jaxon Has Not Pled an Inequitable Conduct Defense**

Jaxon alleges a "potential inequitable conduct defense" to justify demanding additional documents and witnesses from Fitch Even. Such a defense (which requires clear and convincing evidence of actual intent to deceive the PTO and materiality) is disfavored by the courts and has been described as an "overplayed" litigation tactic and a "plague" on the courts and the entire patent system. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289-90 (Fed. Cir. 2011). Yet Jaxon has *not* actually pled such a defense; absent such pleading, discovery related to inequitable conduct is irrelevant.

Further, Jaxon cannot show that the requested discovery should come from Fitch Even, rather than other, better sources, which would not involve any of the risks that necessarily come with deposing opposing counsel (including violations of privilege and work product). "[C]ourts historically have looked with disfavor on attempts to [d]epose opposing counsel." *Miyano Mach. USA v. Miyanohitec Mach., Inc.*, 257 F.R.D. 456, 464 (N.D. Ill. 2008) (internal citations omitted). "[S]uch depositions are 'disruptive of the adversarial process and harmful to the standards of the legal profession and entail a high risk of implicating opinion work product.'" *Taylor*, 2006 U.S.

Dist. LEXIS 94898, at *5 (internal citations omitted). As such, "a motion to depose an opponent's attorney is viewed with a jaundiced eye and is infrequently proper." *M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992). Depositions of opposing counsel "should not proceed unless there is a strong showing of need and evidence that all other discovery avenues have been exhausted." *See Howard v. Securitas Sec. Servs., USA*, 630 F. Supp. 2d 905, 911 (N.D. Ill. 2009).

Indeed, courts routinely reject the position Jaxon now takes—that is, seeking to depose counsel representing a client in concurrent patent proceedings related to the litigation in which the deposition is sought where the defense of inequitable conduct has not been pled. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578 (RWS), 2004 U.S. Dist. LEXIS 13579, at *17 (S.D.N.Y. July 23, 2004), *rev'd on other grounds*, 594 F.3d 860 (Fed. Cir. 2010); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382-86 (D.D.C. 2011). *C.f. aaiPharma*, 361 F. Supp. 2d at 774 n.3 (finding *ResQNet.com's* analysis "particularly instructive" and allowing discovery from patent attorneys only because an inequitable conduct defense had been pled).

In *ResQNet.com* (a case specifically approved by the Northern District of Illinois in *aaiPharma*), the court found that the defendant had not pled an inequitable conduct defense, even though it had pled the defense of patent misuse. *ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *11-12. Thus, as a defendant "is not entitled to depose [a lawyer] on issues that have not been pled," the defendant was unable to use issues related to inequitable conduct to justify its request to depose plaintiff's counsel. *Id.* at *12. The defendant also sought to depose plaintiff's counsel on issues "concerning the prosecution of five U.S. patents." *Id.* at *13. However, as the defendant had "not specified particular subjects not already covered by the prior discovery and [had] not

5

indicated why the information [had] not been or [could] not be obtained through means other than [the lawyer's] testimony," the court found that the defendant had "not established the need for [the lawyer's] deposition with regard to the prosecution history of the various patents." *Id.* Having found *no* need for the lawyer's testimony, the court then determined that potential issues of privilege, the lawyer's duel role as patent prosecutor and trial counsel, and the late stage of discovery all, too, weighed against allowing the deposition to occur. *See id.* at *15-17.

Similarly, in *Sterne Kessler*, the court found "to be inappropriate the deposition … of former counsel [and production of documents] concerning that counsel's representation of a party during reexamination of the same patent concurrently at issue in a pending patent infringement action against the same party." *Sterne Kessler*, 276 F.R.D. at 380. Indeed, although a motion to amend the pleadings was pending, the court found that, as no inequitable conduct defense had currently been pled, the proposed discovery was "not important – at least not yet – to 'issues at stake in the action.'" *Id.* at 383 (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).[4]

Next, the court found that the deposition of the plaintiff's reexamination counsel was "likely to implicate [counsel's] communications with Apple, Apple's patent prosecution strategy, and discussions regarding the history and scope of the 074 patent," and thus, outweighed any possible benefit from the proposed testimony (even though the attorneys were not counsel in the litigation). *Id.* at 385. Because "[i]f deposed, much of the information sought from the

---

[4] Notably, the court found that, even though "the petitioner's representation . . . was limited to the reexamination, and the petitioner is not counsel of record in the Kodak-Apple matter, the procedural posture of the proposed deposition implicate[d] some of the same concerns" present when a defendant seeks the deposition of litigation counsel. *Id.* at 384. In fact, the court noted that "by virtue of the [lawyer's] role defending before the USPTO the same patent at issue in the concurrently pending Kodak-Apple litigation, the petitioner was privy to legal theories, thought processes and strategies underlying Apple's defense to the '074 patent in both fora." Thus, the court held that "even if an inequitable conduct defense were properly pled, deposition of the [lawyer] is inappropriate." *Id.* at 383-84.

6

[reexamination counsel], such as 'client communications, internal communications, and mental impressions,' would likely be protected from disclosure by attorney-client privilege or the work-product doctrine," there were "other more appropriate sources for [information related to the reexamination] rather than deposition of the petitioner." *Id.* at 385. Further, the court found that testimony from counsel "regarding the 'scope of the '074 patent' and the patent's prosecution history" was improper. *Id.* The court held that "the inventor of the patent…[could] speak directly on that topic," and that "the opposing party's counsel should [not] be deposed regarding this information when the information can be obtained elsewhere." *Id.* Here, just as in *ResQNet.com* and *Sterne Kessler*, Jaxon has not pled an inequitable conduct defense in this action. Absent such a defense, all relevant evidence (whether documents or testimony) can and should be obtained from other, more appropriate sources, and Jaxon's motion should be denied.

### A. Discovery Regarding Inequitable Conduct Is Irrelevant to This Case

Jaxon concedes that it seeks discovery to "assess[ ] a *potential* inequitable conduct defense," Doc. No. 1098 at 11 (emphasis added), as its Answer does *not* contain any such defense. Doc. No. 252. Unless and until such a potential defense is actually pled, discovery regarding inequitable conduct (including Fitch Even's state of mind in connection with the original or reexamination proceedings and the reasons behind its submissions to the PTO) is not relevant to an actual claim or defense in this action, and it cannot be used to justify obtaining documents from or deposing Fitch Even. *See ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *12 and n.2 (the "possibility" that defendant might plead inequitable conduct "at some later date has no bearing on the instant motion" and the defendant was "not entitled to depose [counsel] on [inequitable conduct] issues that have not been pled"); *Sterne Kessler*, 276 F.R.D. at 383 ("The

7

Court will not sanction deposition of counsel in the petitioner's situation on the mere prospect of Kodak being granted leave to amend its pleadings."). *C.f. aaiPharma*, 361 F. Supp. 2d at 774 n.3 ("Defendants are asserting inequitable conduct and therefore the discovery from attorneys involved in the prosecution of the patents in suit is directly relevant.").[5]

Moreover, allowing discovery on the issue of inequitable conduct at this late juncture would unfairly prejudice L-3. In an ordinary patent infringement case, "the relevant inquiry in terms of prior art and claim construction is how one of ordinary skill in the art would interpret and understand those prosecution histories." *ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *13. As such, the importance of discovery from patent counsel is "relatively minimal." *See id.* at *16. In contrast, "the defense of inequitable conduct makes the attorneys' mental impressions during the patent prosecution proceedings directly at issue in the litigation." *Id.* Thus, allowing Jaxon's discovery would require L-3 to develop a new issue for the first time; L-3 would have to analyze its defenses to the claim, including good faith belief that it had no duty to disclose, and perhaps, advice of counsel. Allowing this *de-facto* amendment and end-run around discovery through the subpoena of a third party would require the reopening of depositions and motion practice and should not be countenanced on the eve of summary judgment. *See Ramada Franchise Sys. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2004 U.S. Dist. LEXIS 24036, at *21

---

[5] Nor can Jaxon argue that the affirmative defense of inequitable conduct is implied by its affirmative defense of unclean hands. Inequitable conduct and unclean hands are separate defenses with separate requirements. *See, e.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (inequitable conduct "embrace[s] a broader scope of misconduct" than unclean hands and "[i]nequitable conduct also diverged from the doctrine of unclean hands by adopting a different and more potent remedy – unenforceability of the entire patent rather than mere dismissal of the suit"). Thus, Jaxon cannot argue that it impliedly pled inequitable conduct through its pleading of unclean hands. *See ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *11-12 (inequitable conduct could not be implied through the pleading of patent misuse, as the two defenses had different requirements and different remedies).

(N.D. Ill. Nov. 24, 2004) ("Plaintiff and Defendants have proceeded through fulsome discovery…and Plaintiff should not be deprived of the fair results of those labors by having to blindly attempt to rebut an eleventh hour 'fraud' defense or bear the costs and delay of additional discovery when this issue could and should have been raised long before the close of discovery.").

### B. None of Jaxon's Other Asserted Justifications Shows Anything More than An Improper Fishing Expedition and Do Not Justify the Subpoena of Fitch Even

Absent an inequitable conduct defense, Jaxon cannot show that discovery from L-3's reexamination counsel is needed, especially when other less problematic sources are and have been available. First, Jaxon argues that documents and testimony from Fitch Even will bear on prior art and the scope of the Asserted Patents, including information regarding L-3's December 9, 2013 submission to the PTO, wherein Dr. Joshua Phinney averred that a person of ordinary skill would understand the background to the '989 patent to refer to "tens of thousands of volts," instead of "tens of thousands of kilo volt[s]," as was incorrectly stated. *See* Doc. No. 1098 at 11. Though Jaxon seeks to determine "when and why L3 abruptly changed its interpretation of th[e] disputed claim phrase," *see id.*, absent an inequitable conduct defense, such an inquiry is not relevant to the dispositive issue–"how one of ordinary skill in the art would interpret and understand th[e] prosecution histories, not what [L-3's reexamination] counsel thinks about them" or why L-3 only discovered the errors in 2013. *See ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *13.[6]

---

[6] Jaxon's argument that "Fitch Even is not litigation counsel in this case" misses the point. *See* Doc. No. 1098 at 14. Just as in *Sterne Kessler*, Fitch Even, "by virtue of its role defending before the USPTO the same patent at issue in the concurrently pending [L-3-Jaxon] litigation," was "potentially privy to legal theories, thought processes and strategies underlying [L-3's] defense to the ['989 Patent] in both fora." *Sterne Kessler*, 276 F.R.D. at 384. Thus, Fitch Even, by virtue of its representation in *concurrent* reexamination proceedings, is far more like trial counsel than

Further, two of the inventors of the '989 Patent are actually defendants in this case (Youngman and McClure), and not only may Jaxon ask them at any time whether an error existed in the '989 Patent, but also Jaxon already had an opportunity to depose the other named inventors. Jaxon also will be deposing Dr. Phinney on August 4-5, 2014. Any questions Jaxon has regarding the scope of the patents are better directed to the patents' inventors or L-3's expert, rather than to the lawyers who only gained such information through privileged communications with their clients. *See ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *13-15 ("Lansa has already deposed the inventors of the patents alleged to be relevant and those depositions included detailed questions about the patent prosecution histories, the cited prior art, the patents in suit, and numerous related issues…. To the extent that Lansa is seeking information concerning prior art that is not related to inequitable conduct…it has not shown that such information could not be obtained from a variety of expert and fact witnesses, without resorting to the deposition of Kaplan."); *Sterne Kessler*, 276 F.R.D. at 385 ("If deposed, much of the information sought from petitioner [regarding the reexamination], such as 'client communications, internal communications, and mental impressions,' would likely be protected from disclosure by attorney-client privilege or the work product doctrine…. Clearly a deposition of petitioner would require…a painstaking process that poses risks that other sources of discovery do not.").[7]

---

patent prosecution counsel who finished their representation long before the current litigation began. *See id.*; *see also Taylor*, 2006 U.S. Dist. LEXIS 94898, at *11-12 ("[W]hile Dekker is not technically 'opposing counsel' in the Taylor case, he is counsel in a related proceeding that is ongoing in another District. Efforts to depose him are therefore comparable to efforts to depose opposing counsel.").

[7] As described in the Fitch Even Opposition, reexamination materials, more similar to litigation than to *ex parte* initial patent prosecutions, are protected by both the attorney-client privilege and the work product doctrine, and the documents and testimony Jaxon seeks on this issue are protected from disclosure. *See* Fitch Even Opp. at 14. Tellingly, Fitch Even already produced thousands of non-privileged documents in response to Jaxon's subpoena, and

In short, just as in *ResQNet.com* and *Sterne Kessler*, without an inequitable conduct defense on which to rest, Jaxon has the ability (and has had the opportunity) to obtain all of the relevant discovery from sources far less problematic than Fitch Even. Jaxon's conclusory allegations of need and relevance are insufficient to justify compelling discovery of opposing counsel. *See Kessler*, 276 F.R.D. at 385 ("Simply claiming that an opposing party's former counsel has 'non-privileged, factual information' without specifying precisely what information is sought or the benefit of that information is insufficient to overcome the potential risks that the Federal Rules were intended to protect against.").

Second, Jaxon's assertions of a "potential Protective Order violation," are baseless. *See* Doc. No. 1098 at 11-12. In spite of Jaxon's sweeping testimonials, the parties' protective order only requires attorneys or technical advisors "who *receive*[ ] any Litigation Materials… *designated as Attorney's Eyes only–Subject to Protective Order or Attorney's Eyes Only – Subject to Protective Order–Technical*…not [to] supervise or participate in the drafting, filing, or prosecuting of patent applications or in any reexamination proceeding…." Doc. No. 187, ¶ 15 (emphasis added). The Protective Order does not preclude reexamination counsel from sharing documents from the reexamination with litigation counsel once those documents have been completed; it only precludes *litigation counsel* from sharing certain categories of documents with reexamination counsel and from participating, themselves, in the reexamination.

Here, Dr. Phinney reviewed the patents at issue in the reexamination proceeding and found that "[o]ne of ordinary skill in the art at the time of the invention would *immediately*

---

the only documents Jaxon evidently still desires are those related to the reexamination proceeding, Doc. No. 1098 at 11, which are either privileged or could have been sought (to the extent not privileged) directly from L-3.

*envisage* that there was an error in the specification regarding 'tens of thousands of kilo volt transients.'" Doc. No. 1098-5 at 12 n.2 (emphasis added). Rather than base his opinion on any review of Jaxon litigation materials, Dr. Phinney explained that the error was readily apparent based on the face of the '989 Patent, itself. *See id.* ("This correction is apparent based on the implementations and voltage levels described in the '989 specification (e.g., Figure 4 and col. 5:23-61), as well as the size of the electrical systems that operate in the multi-megavolt regime."). Indeed, this error occurred only in the background section of the patent and was not repeated when describing the claimed invention later. *See id.* Dr. Phinney further explained that a voltage level of "tens of thousands of kilovolts" would require the existence of a generator far greater in size and capacity from what the '989 Patent contemplated. *See id.* (noting that a "Marx generator 140 feet tall…generates terminal potentials ranging from 6 to 9 MV [tens of thousands of kilovolts]"). Consequently, anyone with any sort of knowledge in the field would be able to determine, based on both the clear descriptions of the patent and common sense, that the initial background description of the required voltage was in error. Dr. Phinney did not need or use Jaxon's litigation materials in reaching his conclusions.

Nor does L-3's litigation counsel's submission of claim construction materials identifying the same error after Dr. Phinney signed his declaration (November 27, 2013) suggest any "suspect timing" as Jaxon alleges. Rather, that submission shows that, after Dr. Phinney finished his declaration, reexamination counsel simply provided litigation counsel with a copy of the declaration, from which counsel learned of the error. Any such transmittal of documents *from* the reexamination *to* the litigation complied with the parties' protective order. *See* ECF No. 187, ¶

15.[8] Thus, Jaxon's assertion that discovery is needed as to whether litigation counsel, in effect, directed Dr. Phinney to create a declaration finding an error where none previously existed to make the patent conform with Jaxon's products, *see* Doc. 1098 at 11-12, is baseless, and the Court should not countenance such a fishing expedition.[9] *See Todd v. Merrell Dow Pharm., Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991) ("Todd's speculation that Merrell Dow must possess unspecified additional information is not sufficient grounds to embark upon a virtually boundless fishing expedition."); *Miyano Mach.*, 257 F.R.D. at 460 ("Defendants' mere speculation that the documents might reveal discoverable facts is not sufficient."); *Potomac Elec. Power Co. v. Cal. Union Ins. Co.*, 136 F.R.D. 1, 2 (D.D.C. 1990) (denying discovery of communications with reinsurers because the "court will not authorize a fishing expedition").

Notably, even if there were some doubt as to how Dr. Phinney reached his determination, Jaxon will have ample opportunity to question Dr. Phinney on this issue during his deposition in August. Thus, contrary to Jaxon's arguments, Fitch Even is *not* "uniquely situated with respect to the requested discovery." *See* Doc. No. 1098 at 14. Jaxon will have the opportunity to question Dr. Phinney regarding the reexamination proceeding, his declaration, any non-privileged discussions he might have had with counsel and any involvement that he might have had in this litigation. Once again, better sources of discovery other than L-3's counsel exist, and the

---

[8] Nor is it surprising that Jaxon's accused products did not meet the erroneous definition contained in the background section of the patent. As neither Jaxon nor L-3 are in the business of creating the type of 140-foot marx-generator required to create such an output of energy, Jaxon well knows that neither party's products would fit within that erroneous definition. Jaxon's attempts to turn a simple clerical error into a conspiracy are, at best, insincere.

[9] It also is not surprising that no one discovered the error in the background section of the '989 Patent until now, nearly two years after the reexamination proceeding began. As the section of the patent actually describing the claims accurately described the patent's voltage and as no party would ever actually think that the patent covered inventions emitting "tens of thousands of kilovolts," no one would have needed to review the background section of the patent in detail before L-3 hired an expert to review the patent.

documents and deposition requested should be denied. *See ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *13-16; *Sterne Kessler*, 276 F.R.D. at 385. Allowing Jaxon's subpoena to go forward would not only give credence to Jaxon's baseless speculation, but also, in effect, would provide Jaxon with discovery in a reexamination proceeding in which discovery is not allowed. Accordingly, the Court should deny Jaxon's motion in its entirety.

**3.     Jaxon's Subpoena Is an Improper and Untimely Attempt to Re-Depose L-3**

Through its subpoena to L-3's reexamination counsel, Jaxon attempts to evade the discovery limitations this Court set long before it was issued. Jaxon should not be allowed to gain discovery from Fitch Even to which it would not be entitled from L-3. Its motion must be denied.

This Court has limited Jaxon's discovery against L-3 in a number of ways. Specifically, the Court allowed Jaxon to issue only 100 document requests to L-3. The Court also allowed Jaxon no more than 18 hours (total) for a 30(b)(6) deposition of L-3. Doc. No. 760. Before serving its subpoena for documents on Fitch Even on October 24, 2013, Jaxon had sought and received over a million pages of documents from L-3 and had exhausted its remaining document requests. Likewise, Jaxon had used up most of its 30(b)(6) deposition time (and had likely allocated all of its remaining time to the topics identified in its 30(b)(6) notice to L-3 following the Court's decision on L-3's Motion for Protective Order, Doc. No. 760) before serving its deposition subpoena for Fitch Even on December 4, 2013. Many of the categories of documents and deposition topics Jaxon identified relate to the prosecution of the patents, both originally and at the reexamination, the invention and reduction to practice of the patents, and specific products created by L-3 under the patents. *See* Doc. No. 1098-1, at 8-9; 1098-8 at 5-6. Jaxon also seeks privileged communications involving the reexamination proceeding and communications among

14

L-3, L-3's litigation counsel, and Fitch Even. *See id.* Thus, Jaxon seeks either information that L-3, as the patent owner, could have provided during its 30(b)(6) deposition; or privileged information to which Jaxon knows that it is not entitled.

Jaxon has not pled inequitable conduct, and thus Fitch Even's mental impressions or reasons for acting are irrelevant. *See ResQNet.com*, 2004 U.S. Dist. LEXIS 13579, at *12. Absent that specific testimony, all of the questions Jaxon directs to Fitch Even could have been asked of Fitch Even's client (L-3) during fact discovery, which has long been closed. Whether Jaxon (1) did not like the answers it received from L-3; (2) did not ask L-3 the right questions when it had the opportunity; or (3) knew that L-3 would refuse to answer based on attorney-client privilege or work product, Jaxon cannot now get a second bite at the apple by taking those same questions to L-3's reexamination counsel.

## CONCLUSION

For the foregoing reasons, and for those set forth in Fitch Even's Opposition, L-3 requests that the Court deny Jaxon's Motion to Compel documents and testimony from Fitch Even, as L-3's patent reexamination counsel, in its entirety.

Dated: July 28, 2014                                             Respectfully submitted,

/s/   *Benjamin G. Chew*

| | |
|---|---|
| Steven L. Levitt, Esq. | Benjamin G. Chew, Esq. |
| Karen L. Weiss, Esq. | Nigel L. Wilkinson, Esq. |
| STEVEN L. LEVITT & ASSOC., P.C. | PILLSBURY WINTHROP SHAW PITTMAN LLP |
| 129 Front Street | 2300 N Street, NW |
| Mineola, New York 11501 | Washington, DC 20037-1122 |
| Phone : (516) 248-9700 | Telephone: 202-663-8047 |
| Fax : (516) 741-9224 | Fax: 202-663-8007 |
| E-mail : slevitt@sllpc.com | E-mail: benjamin.chew@pillsburylaw.com |
| E-mail: kweiss@sllpc.com | E-mail: nigel.wilkinson@pillsburylaw.com |

*Attorneys for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of July, 2014, I electronically filed the

foregoing using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Daniel E. Johnson | Steven M. Masiello |
| Lora Brzezynski | Jennette C. Roberts |
| R. Tyler Goodwyn, IV | Kathleen K. Custer |
| Derek A. Auito | McKenna Long & Aldridge LLP |
| Claire M. Maddox | 1400 Wewatta Street, Suite 700 |
| McKenna Long & Aldridge LLP | Denver, CO 80202-5556 |
| 1900 K Street, N.W. | Telephone: (303) 634-4000 |
| Washington, D.C. 20006 | Fax: (303) 634-4400 |
| Telephone: (202) 496-7786 | E-mail: smasiello@mckennalong.com |
| Fax: (202) 496-7756 | E-mail: jroberts@mckennalong.com |
| E-mail: djohnson@mckennalong.com | E-mail: kcuster@mckennalong.com |
| E-mail: lbrzezynski@mckennalong.com | |

/s/ *Nigel L. Wilkinson*

404684035v6