(IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02868–MSK–KMT

L-3 COMMUNICATIONS CORPORATION, and
L-3 SERVICES, INC.,

      Plaintiffs,

v.

JAXON ENGINEERING & MAINTENANCE, INC.,
JONI ANN WHITE,
RANDALL K. WHITE,
SCOTT WHITE,
SUSAN RETTIG,
CHARLES RETTIG,
JAMES YOUNGMAN,
JERRY LUBELL,
KELLY RICE,
JOHN MCCLURE, and
JOHN DOES 1-25, said names being fictitious as such names are unknown at this time,

      Defendants.

## ORDER

This matter is before the court on "Defendants' Accounting for Reasonable Costs and Attorney's Fees Incurred in Bringing the Motion for Order to Show Cause"("Accounting") [Doc. No. 1081]. Plaintiff filed its objections on July 10, 2014 [Doc. No. 1103]. No Reply was allowed.

## BACKGROUND

On June 10, 2014, this court heard extensive argument on "Defendants' Motion for an Order to Show Cause Why L3 Should Not be Held in Civil Contempt, and for Sanctions, for Using Defendants' Privileged Materials." ("Show Cause Motion") [Doc. No. 1011]. Defendants complained that several of their privileged documents were found in Plaintiffs' possession at a time when the documents should have been destroyed or returned pursuant to the previous orders of this court and the Orders of the Special Master. The factual underpinnings for Defendants' Show Cause Motion were fully developed in the briefing and during the hearing and will not be repeated here. (See Transcript of June 10, 2014 Hearing ("Tr.") [Doc. No. 1080].) Ultimately this court found that Plaintiffs were responsible for destroying the privileged documents in their possession once alerted to the applicable privilege but failed to do so and instead attempted to use one of the three documents during a deposition. The court sanctioned Plaintiffs by requiring they pay for Defendants' costs and fees incurred in having to prosecute the Show Cause Motion as a result of Plaintiffs' refusal. This court stated, however, "I'm imposing this as a sanction for what I think is a fairly significant breach of a discovery responsibility, but I don't see any real damages other than that, frankly." (Tr. at 135, l. 13-16.)

Defendants filed their accounting in accordance with the court's directive, requesting a total award of $67,908.50. Plaintiff objects and requests that the court award sanctions, if at all, in an amount not to exceed $10,000.00. The question now before the court is the reasonableness of the amount of fees and costs claimed by the Defendants pursuant to the court's sanction order.

## *LEGAL STANDARD*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended . . . multiplied by a reasonable hourly rate" which will result in what is commonly called the loadstar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id*. "[A] claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)

The party seeking an award of fees should submit specific evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). "A district court is justified in reducing the number of hours considered if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id*.; *see also Robinson*, 160 F.3d at 1281.

Once the court has adequate time records, it must then ensure that the attorneys requesting fees have exercised reasonable billing judgment under the circumstances of the case. *Id*. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id*; *see also Hensley*, 461 U.S. at 434, 437 (counsel are expected to

3

exercise their billing judgment, "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, . . . .").

When a court examines the specific tasks listed by an attorney claiming fee reimbursement, the court must first determine if the fees are properly chargeable under the circumstances of the case and then whether the number of hours expended on each task is reasonable. *Id.* Among the factors to be considered are: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Robinson*, 160 F.3d at 1281. "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

The Tenth Circuit has also opined that "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986) (reduction in fees appropriate due to inexperience of an attorney which led to over-billing).

### *ANALYSIS*

#### *A.   Billing Rates*

A reasonable hourly billing rate is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). A court may use its own knowledge of the prevailing

market rate to determine whether the claimed rate is reasonable.  *Id.* at 1079; *see also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (approving the district court's determination of the applicable hourly rate by "relying on its knowledge of rates for lawyers with comparable skill and experience practicing" in the relevant market).  The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1203 (10th Cir. 1998) (internal citations omitted).  In order to satisfy this burden, the party requesting fees must produce "satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The Defendants seek reimbursement for the time spent by Daniel Johnson at the rate of $695.00 per hour, for Jenette C. Roberts[1] at the rate of $480.00 per hour, and for Kathleen K. Custer at $365.00 per hour.[2]

As support for its hourly billing rates, Defendants claim that their law firm, McKenna Long & Aldridge ("MLA"), "retains a large accounting/consulting firm that conducts a proprietary survey of attorney fee rates in the cities where MLA has offices."  (Accounting, Ex. 1 at 6.)  Defendants assert that the latest survey results show that, for equity partners at large firms in

---

[1]  Ms. Roberts is no longer associated with MLA and is not currently counsel on this case.
[2]  This court declines to allow any reimbursement for time itemized by Lora A. Brzezynski or Suzanne DeFrancisco and therefore does not consider whether their billing rates are reasonable. Likewise, the court does not consider the time submitted for technology consultation with and the declaration of Damon Goduto with Iris Data Services.

5

Denver, the standard hourly billing rates range from $448 to $800 per hour, and associate rates range from $254 to $508 per hour." (See Accounting, Ex. 5.) Also proffered in support of its hourly rates is an article entitled "Billing Rates at the Country's Priciest Law Firms" apparently extracted from the National Law Journal, January 13, 2014, which does not contain any Colorado law firms among it "priciest" (Accounting, Ex. 6), and a "2012 NLJ Billing Survey," apparently extracted from ALM Legal Intelligence, which lists fees for only one Denver-based large firm, Holland & Hart, indicating that its highest billing rate is $695.00 per hour and the lowest billing rate is $180.00 per hour. (Accounting, Ex. 7.) The medium partner billing rate at Holland & Hart is listed as $420.00 per hour and the medium rate for an associate at that firm is $268.00. (*Id.*)

Last year Senior Judge Lewis T. Babcock had occasion to collect cases on the then-prevailing attorney hourly fee rates in the Colorado area in *Hitchens v. Thompson National Properties, LLC,* Case No. 12-cv-02367-LTB-BNB, 2014 WL 2218094, at *2 (D. Colo. May 29, 2014). In analyzing the $250.00 hourly billing rate of one of the attorneys described as "graduated from law school in 2005, has been licensed to practice for eight years, and is licensed in several states and federal courts including Colorado, Montana, Nevada, and North Dakota," the court found $250.00 per hour "a reasonable rate for an attorney of [that] experience in the Denver legal market. *Id.; see also Peterson–Hooks v. First Integral Recovery, LLC*, No. 12–cv–01019–PAB–BNB, 2013 WL 2295449, at *7 n.10 (D. Colo. May 24, 2013) (collecting comparable cases). Judge Babcock also found that the higher billing rates for three other attorneys, one at $430 an hour and two at $405 an hour, were also reasonable for attorneys described as follows: 1) $430

billing attorney has 30 years of experience litigating complex business and commercial disputes and regularly handles trial, arbitration, mediation and appeal of large construction, fire subrogation and business matters; 2) first $405 billing attorney has 25 years of experience and regularly handles complex commercial litigation, including securities matters; and 3) second $405 billing attorney has 20 years of experience litigating complex business and commercial disputes. *Id.*

Other cases have examined and upheld billing rates as high as $700.00 per hour in the Colorado area. *See Dines v. Toys "R" Us., Inc.*, Civil Action No. 12-cv-02279-PAB-KMT, 2014 WL 201735, at *2 (D. Colo. Jan. 17, 2014)(in considering sanctions for discovery violation, approving rate of $330.00 per hour for attorney with 40 years of practice in complex commercial litigation); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas Corp.*, 958 F. Supp. 2d 1238 (D. Colo. July 23, 2013) ("the prevailing rates in Denver for experienced litigators approach $400 per hour in recent years" and holding $450 per hour represented the maximum hourly rate that could be considered reasonable for lead trial counsel); *Home Design Servs. v. Collard Props., LLC,* Case No. 10-cv-00011–MSK–BNB, 2012 WL 2862881, *3 (D. Colo. July 11, 2012) (approving rate of $395.00 per hour for lead attorney); *Jankovic v. Exelis, Inc.*, Case No. 12–cv–01430–WJM–KMT, 2013 WL 1675936 (D. Colo. Apr. 17, 2013) (approving rate of $430 per hour); *Watson v. Dillon Cos., Inc.*, Case No. 08–cv–00091–WYD–CBS, 2013 WL 4547521, *2 (D. Colo. Aug. 28, 2013) (approving rate of $550 per hour for lead attorney); *Biax Corp. v. NVIDIA Corp.*, Case No. 09–cv–01257–PAB–MEH, 2013 WL 4051908 (D. Colo. Aug. 12, 2013) (relying on 2010 National Law Journal ("NLJ") billing survey showing Denver firms billed between $285 and $810 per hour for partners; approving rates of over $700 per hour for partners with comparable experience only

"given the complexity of the subject matter, the high stakes of the case, and the contentiousness of the dispute").

Mr. Johnson, lead counsel for Defendants, is a partner in the Washington D.C. office of national law firm McKenna Long & Aldridge.  Mr. Johnson obtained his law degree 1983, has 30 years of experience litigating complex disputes, and has spent over 20 years specializing in the representation of clients in multi-million dollar trade secret lawsuits involving government contractors, such as the parties in this case.  (Accounting at 7.)  Ms. Roberts is co-counsel for Defendants and is a partner in MLA's Denver office.  She obtained her law degree in 2002 and specializes in complex business litigation for government contractors and has extensive experience managing complex business litigation, including those involving large electronic discovery issues.  (*Id*. at 8-9.)  Ms. Custer is co-counsel for Defendants and is an Associate in MLA's Denver office.  Ms. Custer graduated from the University of Colorado Law School in 2010.  (*Id*. at 9).

The court will accept as reasonable the hourly billing rate of Daniel Johnson at $695.00, as lead counsel on this case, based in Washington, D.C.  By accepting Mr. Johnson's hourly billing rate, this court recognizes the value inherent in retaining lead counsel who is a partner in a very large and prestigious law firm in a case which has become as heavily litigated as this one and which involves large government contractors on both sides.  However, the hourly billing rates for Ms. Roberts and for Ms. Custer are not comparable to local billing rates and the court finds them excessive in the context of this case, especially as to the issues involved in the Show Cause Motion and given the role they have played in the litigation and the number of lawyers representing

Defendants.  Therefore, the court finds that a billing rate of $350.00 per hour for Ms. Roberts and of $250.00 per hour for Ms. Custer more closely resembles rates for comparable attorneys in this Denver metropolitan area.

### B.    *Hours Billed*

In examining the propriety of the time spent by the three lawyers, the court notes that Ms. Roberts appears to have been the primary drafter and filer of the Show Cause Motion.  Ms. Roberts claims 25.7 hours of time in the drafting and editing of the motion.  Ms. Roberts has appeared before this court on many occasions and is wholly capable of preparing a motion such as the one at issue on June 10, 2014.  She did not need the "guidance" of any other lawyer in the case, albeit that the Defendants (and the Plaintiff for that matter) seem wedded to the idea of over-lawyering every issue at every hearing.  This is, of course, the client's prerogative when it is their wallet which is lightened; however, in a reasonableness analysis when shifting fees to the other side, this court finds that supervision or input on Ms. Robert's work from Mr. Johnson or any other of the lawyers assigned to the case was not necessary and therefore is not "reasonable." Further, the court finds the amount of time spent drafting a motion involving only three[3] out of many thousands of documents, especially in light of the marginal use or value of the documents in the context of the case, is excessive.  Therefore, the court has reduced the number of hours attributable to drafting and filing the motion to 12.  This court finds that one and one-half full days to draft a 12 page motion with very little legal citation is reasonable.  The court therefore allows $4,200.00 in attorney fees for drafting and filing the show cause motion.

---

[3] One of the three documents appeared in several variations throughout the discovery.  It appears, however, that Plaintiffs possessed only one of the variants.

Ms. Custer appears to have been the primary preliminary drafter of the Reply in this case. She has claimed 24.5 hours devoted to this task.  Again, the court finds this grossly excessive given the issues involved and the relative unimportance of the actual documents, notwithstanding the importance given by the court to the concept of privilege when dealing with complex discovery.  Even more astounding, Mr. Johnson apparently was the "teaching" partner for Ms. Custer and spent a whopping 16.5 hours revising Ms. Custer's work on May 21 and 22, 2014.  If the court were to allow such a billing, Ms. Custer's apparently completely worthless drafting would be billed at $6,125.00 (even at the reduced hourly rate) and Mr. Johnson's reviews and revisions would cost the Plaintiffs $11,467.50 --- a total of $17,592.50 to draft and file a 10-page Reply.  This figure is not reasonable, to say the least.  The court, therefore, will disregard the billing of both attorneys for the drafting and filing of the Reply given that the time spent was apparently educational rather than a necessary part of the case.  The court will therefore allow $2,100.00 for the fees attributable to straightforward drafting of the Reply.  This figure represents 6 hours of attorney time at Ms. Roberts' billing rate.  Given that Ms. Roberts was the person with the most knowledge about the issues involved, she could obviously have done the job in a much more expeditious fashion.

The court specifically awarded attorney fees for Ms. Roberts' and Mr. Johnson's attendance at the hearing on the Show Cause Motion.  Therefore 4.2 hours of Ms. Roberts' time and 4.6 hours of Mr. Johnson's time will be allowed.  All parties in this action have been represented by numerous retained counsel at each and every hearing before this court and to call the litigation style "scorched earth" would be an understatement.  Because of this, it was

reasonable for Mr. Johnson to appear at the hearing and take the lead, even in light of Ms. Roberts' superior knowledge of the specific facts involved in the Show Cause Motion. Therefore the attorney fee amount attributable to attendance at the hearing by both attorneys is $4,667.00.

The court specifically allowed a claim for Mr. Johnson's attorney time to travel to and from his out-of-state office to Denver for the hearing. Again, his appearance was necessitated by the way the litigation in this case has been undertaken. Mr. Johnson submitted billing for 6.4 total travel hours. The amount of time billed involves only time directly attributable to Mr. Johnson's actual time on the airplane from his location to Denver. This is reasonable. Therefore, the award for Mr. Johnson's travel time is $4,448.00. The court will not allow any additional preparation time for the hearing for Mr. Johnson in that he could have (and perhaps did) use the 3.2 hours traveling to Denver, at least in part, to prepare for the hearing. Ms. Roberts claimed a total of 8.2 hours to prepare for the hearing. As noted, Ms. Roberts drafted the Motion and was the most knowledgeable person about the issues. The court finds that a full day devoted only to preparation for the hearing on issues with which she was intimately familiar, and especially in light of the fact that the privileged documents themselves had been purged prior to the hearing, is unreasonable. The court will allow 2 hours of preparation time for Ms. Roberts, for a total of $700.00.

Finally, the Defendants have claimed time spent in preparing the Accounting filed with to the court. The court agrees that this is reasonable; it is hardly worth obtaining sanctions for the behavior of one's opponent if time spent calculating the requested fees is deducted from the award. Ms. Custer appears to have done the detail work in preparing the accounting for fees. Defendants

claim 8.1 hours of her time. Again, Mr. Johnson apparently noted significant areas of deficiency in the draft accounting since he spent 3.1 hours of time at his much higher rate revising the accounting. The court would expect a fourth-year associate at a major law firm to be competent to compile a simple accounting based on billing records without supervision. The court will allow 5 hours at Ms. Custer's billing rate as the amount of time reasonably expended for drafting and submitting the Accounting because the Accounting also contained support for the hourly fee rates of each of the attorneys. The law requires that lead counsel "winnow" any billing submitted to the court seeking recovery of attorneys' fees. *Case*, 157 F.3d at 1250. Although the court cannot find any evidence of "winnowing" in the context of an almost $68,000.00 attorney fee request for filing and arguing one minor motion, the court nevertheless will accept that Mr. Johnson was required to engage in a review and therefore will allow 1 hour of his time for that purpose. Therefore the total amount allowed for the drafting of the accounting submitted in response to this court's award of sanctions is $1,945.00.

  Therefore, the total award levied as sanctions against and payable by the Plaintiffs to Defendants in connection with the court's orders on June 10, 2015 is **$18,060.00**. Although this is a high total amount when viewed in isolation, the court views this fee award sanction as reasonable given the issues presented and the manner in which all parties have litigated the entire case.

It is **ORDERED**

Plaintiffs shall pay to Defendants the total sum of $18,060.00 as sanctions pursuant to this court's June 10, 2014 Order [Doc. No. 1065] on or before April 10, 2015.

Plaintiff shall file proof of full payment in the amount of $18,060.00 to Defendants on or before April 13, 2015.

Dated this 12th day of March, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge